(90 South. 878)

## THOMAS v. STATE.    (7 Div. 743.)

(Court of Appeals of Alabama. June 30, 1921. Rehearing Granted Aug. 30, 1921.)

**1. Criminal law ⬉1169(2)—No error in admission of testimony as to facts already testified to.**

In a prosecution for murder, the court did not materially err in permitting a witness to state that he shook hands with defendant after seeing him shoot deceased, where he had already testified to such facts.

**2. Criminal law ⬉419, 420(1)—Testimony that witness heard about trouble afterwards improperly admitted.**

In a prosecution for murder, admission of a witness' testimony that she heard about the trouble afterwards was erroneous.

**3. Criminal law ⬉396(2), 412(1)—Testimony as to what defendant said to witness after shooting properly excluded.**

In a prosecution for murder, testimony of defendant's witness as to what defendant said to him after the shooting was properly excluded, where the conversation was not shown to be a part of the res gestæ, or of the conversation brought out by the state; the state's witness having merely stated that she did not hear the conversation.

**4. Criminal law ⬉1170½(3)—Appellant cannot complain of unanswered questions.**

Appellant cannot complain of questions to which there were no answers.

**5. Homicide ⬉160—State may prove defendant had pistol concealed at about time of shooting.**

In a prosecution for murder, it is relevant and material for the state to show that at about the time of the shooting defendant had his pistol concealed.

---

**6. Criminal law ⬦═364(4)—Homicide ⬦═174 (8)—Threat to kill deceased's son not res gestæ but admissible to show hostility toward deceased.**

In a prosecution for murder, where defendant denied that he told deceased's son shortly after the shooting that if he threw two bricks at him which he had picked up he would shoot him as full of holes as he had his father, such son's testimony as to such facts was not a part of the res gestæ, but was admissible as tending to show defendant's hostility toward deceased.

**7. Criminal law ⬦═1044—Objection to improper argument not available where no motion to exclude.**

Improper argument of counsel cannot be complained of on appeal, where appellant made no motion to exclude it when made.

**8. Criminal law ⬦═728(4)—Objection to entire argument held unavailable.**

An objection to improper argument in reference to excluded testimony cannot avail, where the objection was made to the argument as a whole, including that as to evidence properly admitted.

On Rehearing.

**9. Criminal law ⬦═421(1)—Testimony based on hearsay, that defendant was traveling path contrary to deceased's warning improperly admitted.**

In a prosecution for murder, which resulted from a contention in reference to the use of a path through deceased's back yard, which the state contended defendant had been warned not to travel, testimony of deceased's brother that defendant was traveling the path was improperly admitted, where it was shown to have been based on hearsay.

**10. Criminal law ⬦═719(4)—Argument on properly excluded testimony improperly permitted.**

In a prosecution for murder, the court improperly permitted state's counsel to quote to the jury and comment on deceased's wife's testimony that deceased's little girl ran out to meet him and asked if he had got her any candy, after having properly sustained defendant's objection to such testimony.

**11. Homicide ⬦═276—Whether defendant was justified in shooting in self-defense held for jury.**

In a prosecution for murder, where the evidence was conflicting as to whether defendant was free from fault in provoking the difficulty, and was in imminent peril of losing his life or suffering grievous bodily harm with no reasonable mode of escape without apparently increasing his peril, the issue as to whether defendant was justified in shooting was for the jury.

**12. Criminal law ⬦═730(14)—Solicitor's reference to deceased's widows and orphans held prejudicial though withdrawn.**

In a prosecution for murder, the solicitor's argument "that we have got to stop this business of running around making widows and orphans" held prejudicial error, though the court stated that it was not a proper argument, and the solicitor withdrew it.

Appeal from Circuit Court, Shelby County; W. L. Longshore, Judge.

A. A. Thomas was convicted of murder in the second degree, and he appeals. Reversed and remanded.

G. H. Bumgardner, of Bessemer, for appellant.

Counsel discuss the evidence, but without citation of authority. As to remarks of counsel being improper and highly prejudicial, he cites the following cases: 62 Ala. 164; 66 Ala. 48; 39 South. 370; 11 Ala. App. 644, 66 South. 942; 48 South. 662.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

MERRITT, J. The appellant was indicted for murder in the first degree, convicted of murder in the second degree, and sentenced to the penitentiary for a term of 10 years. The killing appears to have been the result of a contention on the part of appellant and deceased, in reference to a path that led through deceased's back yard, and near or close to a toilet. The contention of the state being that appellant had been warned not to travel this path, and that of the appellant that it was used generally by the public, and that he had not used the path after he had been warned not to do so. While the witness Wallace Glenn did state at first that he did not know of his own knowledge that the appellant traveled this pathway, on further questioning by the solicitor he stated, over the objection of the appellant, that he saw appellant travel the path leading by the toilet on the day prior to the shooting. This testimony was relevant as tending to throw light on the inquiry as to who was at fault in bringing on the difficulty. In view of the uncontradicted testimony that at the time of the shooting the deceased first called to appellant and told him that he wanted to see him about traveling this path, and the testimony that he traveled it the day before, all taken together may not have been considered by the jury unfavorable to the defendant, in his contention that he was free from fault in bringing on the difficulty, and as tending to show that the path was used generally.

[1] There is no merit in the contention that the court committed error in permitting the witness Wallace Glenn to state that after he saw appellant shoot deceased he then shook hands with appellant. Witness had already stated he saw the shooting, and that he afterwards shook hands with appellant.

[2] That the witness Thelma Glenn heard

about the trouble afterwards was patently objectionable.

[3] The objection of the solicitor to the question, "What did he say to you?" propounded to the witness Crump, was properly sustained. This was not shown to be a conversation which could be a part of the res gestæ, neither was it a part of a conversation that had been brought out by the state. The state's witness Thelma Glenn merely stated "that she did not hear the conversation between witness and deceased."

[4] There was no answer to the question, "But Thomas kept one of those things [pistol] around him that day?" Consequently appellant cannot complain, and this may be said of other questions contained in the record, of which complaint is here made.

[5] It was relevant and material for the solicitor to show that about the time of the shooting the appellant had his pistol concealed.

[6] Leo Glenn, the 11 year old son of the deceased, testified that he was not present at the time of the shooting, but was at the depot and heard the shots, and went to the place in a few minutes where his father lay dead, and that the defendant then came along. The state thereupon asked the witness:

"State whether or not when you got to your father's body and saw Mr. Thomas coming down you picked up two pieces of brick, and if Mr. Thomas in the presence of Mr. Crump there at your father's body told you if you throwed those two bricks at him that he would shoot you as full of holes as he had your daddy."

This question was objected to by the defendant as not being a part of the res gestæ, and was not in rebuttal. The objection being overruled, witness answered, "Yes, sir," and motion made to exclude the answer, and the same grounds of objection as had been interposed to the question. The defendant had testified on cross-examination that such an incident had not taken place. This statement attributed by the testimony was no part of the homicidal act nor of the circumstances so immediately attending the act as to constitute it a part of the res gestæ. But evidence may be capable of different constructions, and we cannot say that this had no tendency to show defendant's hostility at the time of the declaration, and from that the jury may have inferred hostility at the time of the killing. Charlie Carter v. State, 205 Ala. 460, 88 South. 571; Smith v. State, 183 Ala. 10, 62 South. 864; 1 Wigm. on Evidence, § 396; McManus v. State, 36 Ala. 285; Henderson v. State, 70 Ala. 29.

[7, 8] The court excluded the statement of the solicitor from the jury to which appellant objected. It would be sufficient to say that there was no motion made to exclude the argument of the special prosecutor, which was objected to, from the jury, but a portion of the testimony argued was not excluded from the jury when offered, and the objection of the appellant, being as a whole to that part of the evidence that was admitted and that which was excluded, cannot avail. He should have objected separately to the argument in reference to the excluded testimony. Kinsaul v. State, 8 Ala. App. 405, 62 South. 990; 4 Michie, Dig. p. 323.

There being no error in the record, the judgment of conviction must be affirmed.

Affirmed.

## On Rehearing.

PER CURIAM. Upon a further consideration of the facts in this case, as shown by the record, and the rulings of the court in several instances, we have reached the conclusion that the application for rehearing should be granted, the order of affirmance set aside, and the judgment of the lower court reversed, and the cause be remanded.

[9] The homicide complained of was the result of a controversy between the defendant and deceased as to defendant having traveled a path through the yard of deceased, and the state contended that he so traveled said path after having been warned not to do so. This contention was strenuously denied by defendant. In order to ascertain who was the aggressor and who was at fault in provoking or bringing on the difficulty in which Glenn, the deceased, met his death, it was highly important to know whether the contention of the state or that of the defendant in this connection was correct. This being true, we are of the opinion that the court erred in not sustaining the motion of defendant to exclude that portion of the testimony of witness Wallace Glenn, brother of the deceased, wherein he testified "that defendant certainly was traveling the path in question," when it was shown that this portion of said witness' testimony was not based upon facts within his own knowledge, but was merely hearsay. The witness Glenn himself in reply to the question by defendant's counsel, "Did you see him traveling it?" answered "No, sir."

[10] State witness Ethel Glenn, wife of deceased, on rebuttal examination stated:

"No, sir, he walked as straight as he ever did, and then his little girl ran out to meet him, and asked him if he had got her any candy, and he told her No."

The court properly sustained defendant's objection to the latter portion of this answer, but, notwithstanding this fact, over the objection of defendant, permitted counsel for state to quote this testimony to the jury and to comment upon same during his argument. In overruling the seasonable objection of defendant in this connection the court committed error. Sanford v. State, 143 Ala. 78, 39 South. 370. Counsel should not be permitted

comment upon facts not before the jury, or not legally competent and admissible as evidence. McAdory v. State, 62 Ala. 154, 163; Sullivan v. State, 66 Ala. 48; Dollar v. State, 99 Ala. 236, 13 South. 575.

[11, 12] In the course of his argument the solicitor made use of the expression, "We have got to stop this business of running around making widows and orphans." It is conceded that this was improper. As stated by the court, "that is not a proper argument." And the solicitor recognized this also, and stated, "We will withdraw the statement." The vital issue in this case was whether or not the defendant took the life of deceased in an unlawful manner. The contention of the state was that he did, and the state's testimony appears to bear out this contention. On the other hand, the defendant strenuously insisted that in taking the life of deceased he acted within his rights conferred by the law; that he was free from all fault in provoking or bringing on the difficulty; that he was in imminent peril of losing his life or suffering grievous bodily harm from the deceased at the time he fired the fatal shot, and that there was no reasonable mode of escape without apparently increasing his peril. It appears that the testimony of defendant and his witness sustain him in this contention. It thus became a question of fact for the jury to determine, and in so determining, the issues involved should be submitted to the jury free from any appeal to prejudice or other improper motive. If as a consequence of this unfortunate homicide it resulted, as may be judged from the record, that a widow and orphans were left to mourn the death of deceased, this fact of itself could shed no light upon the issues involved, and the defendant's cause should not be burdened by unauthorized statements of this character, for the law makes no distinction in matters of this nature. A man with wife and children can be accorded no more rights under the law than a man without such wife and children, and that an expression of this character might be calculated to highly prejudice the minds of the jury under given circumstances and conditions cannot be doubted. It often happens that in trials of this character the loved ones of the deceased and the defendant appear in court and sit with counsel inside the bar, and in the presence of the jury many pitiable scenes are thus depicted. And in such surroundings impassioned arguments by counsel, accompanied by such unauthorized statements as here, "We have got to stop this business of running around making widows and orphans," are certainly calculated to engender unduly the sympathies of the jury on the one hand, or to inflame their minds with prejudice and passion upon the other hand. Such unauthorized remarks have no place in a trial where on the one hand a defendant's life or his liberty is involved, and on the other the proper administration of the law is concerned. It is not insisted that counsel for the state deliberately made use of the objectionable expression. In fact counsel for defendant very generously states in his brief:

"We feel that in using these words to the jury that this appellant was done a great injustice; we feel, however, that it was unintentional on the part of the solicitor that the statement was made in his argument as a climax," etc.

The question here presented we think comes clearly within the rule announced in the following cases: Tannehill v. State, 159 Ala. 51, 48 South. 662; Stephens v. State, 17 Ala. App. 548, 86 South. 111; Scott v. State, 110 Ala. 48, 20 South. 468; Standridge v. Martin, 203 Ala. 486, 84 South. 266, and cases cited.

The application for rehearing is granted, the order of affirmance set aside, and the judgment of conviction in the lower court is reversed, and the cause remanded.

Application granted.

Reversed and remanded.