167 So. 540

**ARANT v. STATE.**

**3 Div. 147.**

Supreme Court of Alabama.

March 12, 1936.

Rehearing Denied April 30, 1936.

Paul D. Hartley, of Georgiana, and Calvin Poole, of Greenville, for appellant.

A. A. Carmichael, Atty. Gen., James L. Screws, Asst. Atty. Gen., H. P. Rogers, Sol., of Greenville, and Jos. R. Bell, Deputy Sol., of Hayneville, for the State.

GARDNER, Justice.

The appeal is from a conviction of murder in the first degree, with the infliction of the death penalty.

Admittedly, on the night of June 20, 1935, defendant killed Addie S. Norman by shooting her with a shotgun, at the same time and with the same weapon also killing her husband, John E. Norman. Both victims were young people of pleasing personalities, and held in high esteem by the residents of their community. A telephone call from defendant, who lived only a short distance away, lured the husband from his home to defendant's, the wife accompanying the husband, where they were ruthlessly slain, evidently from ambush, and in the manner indicated.

It is a sad story, and the exigencies of the case call for no detailed consideration of the facts.

Defendant and his wife also bore good reputations in the community (Fort Deposit), where defendant had resided for some five years, and had been manager for a public service corporation, performing the duties of the position acceptably and well.

All parties were apparently on friendly terms, and the motive for the crime, from this record, appears unsolved. The defendant did not take the stand, and no eyewitness to the shooting testified. He rested for his defense upon the plea of insanity,

and offered much evidence, expert and otherwise, to sustain his plea. The state likewise introduced expert and lay witnesses as well in contradiction of this defense and to establish defendant's sanity. There was therefore sharp conflict in the proof and the question of defendant's sanity one peculiarly within the province of the jury.

■ We conclude (and, indeed, it is not contended otherwise by able counsel for defendant) that this court would not be justified in disturbing the jury's verdict upon the theory that it is contrary to the great weight of the evidence.

Defendant's trial (August 8, 1935) appears from this record to have been conducted in an orderly manner, free from any unseemly demonstration, and, indeed, there is no indication in the proof of any threat against defendant from the time of the commission of the offense, though he remained in Fort Deposit for at least two hours after the killing before being brought to Montgomery. Doubtless, very naturally, the people of the community were horrified at such a crime in their midst, but they evidently believe in the orderly processes of the court, and made no demonstration of passion and prejudice.

The case of Seay v. State, 207 Ala. 453, 93 So. 403, cited by defendant, presents no analogy in its facts, and is here inapplicable.

■ We have not overlooked the proof, offered on motion for new trial, as to remarks of some of the spectators that defendant was "playing crazy," or "had better play crazy," made before the trial had actually begun, when defendant gave indication of some character of convulsion, and was carried into an adjoining room. The proof is conflicting as to whether or not defendant was feigning, and nothing further of like character appears to have occurred during the trial. Jurors testified the occurrence had no influence on their minds. The trial judge, who was in better position to comprehend the situation, denied a continuance on this ground, and it is clear this action presents no valid reason for a reversal of that ruling here.

■ And the matter of continuance on account of absent witnesses for defendant was a matter resting in the court's sound discretion, of which, very clearly, no abuse is shown.

During the progress of the trial few exceptions were reserved.

■ Defendant's mother testified at length, and in more or less detail concerning her son's mental condition, and manifestations of a deranged mind. After defendant's return from the Bondurant Sanatorium in 1926, the mother, after relating other matters, referred to defendant's effort in raising chickens, and the solicitor —perhaps slightly impatient—made remark to the effect he made no objection to it, but it was consuming too much time, "talking about chickens."

Defendant's counsel made reply by way of rebuke to the solicitor, and objected to the remarks, to which the court merely stated he saw nothing wrong with the remark, and the examination proceeded. This was but a passing incident of the trial with no definite ruling, and no exception reserved.

■ Like observation is applicable to the ruling on the question of Dr. Lee as to whether or not in his opinion the defendant was feigning, referring to the convulsion, which occurred just preceding the actual trial. The court sustained defendant's objection, and the question was not answered. There was no necessity for instructions to the jury concerning this matter—a mere incident in the trial—and defendant was clearly not prejudiced thereby.

■ One Wild, a witness for defendant, was examined as to defendant's conduct at the home of witness, accusing and threatening his wife. On cross-examination the witness admitted detecting whisky on defendant's breath, and that on this occasion he presumed "he was intoxicated." The solicitor then asked the witness would he not say that defendant "just came home drunk and raised hell with his wife"? Defendant objected to the question on that ground that it was improper and called for a conclusion, and the question was not answered.

We interpret the record as disclosing that in fact the court ruled favorably to defendant as to the question, in that he said "that is a conclusion on the part of the witness," and that the witness and solicitor likewise so interpreted it. In the objection, however, to the question, counsel for defendant also embraced a request that the solicitor be reprimanded for asking a question of that kind, and moved for a new trial. This motion was overruled and exception reserved.

We consider that a mere statement of the matter suffices as an answer to the argument here advanced that a reversal should be had for this ruling on the motion, and that further discussion is unnecessary.

■ The state offered proof as to the details of the crime—the location of the body of Mrs. Norman on the porch, and the wound in her side, where three empty shells were found and a buckshot located in an upright plank on the porch, as well also concerning a vine around or near the porch.

As previously observed, no eyewitness to the tragedy testified, and where the defendant stood when he fired the fatal shot was left to inference. That he fired from ambush we think a very reasonable conclusion, and we also conclude that the solicitor might well argue, as an inference from all the proof, that he stood behind the vine. The objection, therefore, to such a statement by the solicitor in his argument was overruled without error.

And, in any event, in view of the sole defense of insanity, defendant's exact location at the time does not appear to be a matter of much consequence.

■ Counsel for the state and defendant are allowed a rather wide latitude in drawing their deductions from the evidence. Lindsey v. State, 17 Ala.App. 670, 88 So. 189; Cross v. State, 68 Ala. 476; Hobbs v. State, 74 Ala. 39, 41.

■ It is insisted that the statement of the solicitor in argument to the jury to the effect that "nobody knows how they were shot but him, and whether he will ever state it or not, I don't know," was highly prejudicial, invasive of defendant's statutory right of immunity from comment for failure to testify, and should suffice to reverse the cause, notwithstanding the court sustained his objection thereto. Defendant suggested no instruction to the jury or that the court take further account of the remark. It is assigned in the motion as one of the grounds for a new trial, and, to be available for reversal, the court must be persuaded the remark was so grossly improper and highly prejudicial as to have been ineradicable. American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507; Bachelor v. State, 216 Ala. 356, 113 So. 67; Anderson v. State, 209 Ala. 36, 95 So. 171. We are not so persuaded. There was

no direct reference to defendant's failure to testify. Section 5632, Code 1923; Kilpatrick v. State, 213 Ala. 358, 104 So. 656; May v. State, 209 Ala. 72, 95 So. 279. It is only indirectly involved by way of construction of the language used. Being subject, however, to this construction, the concluding words may be considered as embraced within the inhibition of our statute. Baker v. State, 122 Ala. 1, 26 So. 194; Stone v. State, 105 Ala. 60, 17 So. 114.

A review of the numerous authorities cited in the note to Miller v. Commonwealth of Virginia, 153 Va. 890, 149 S.E. 459, 68 A.L.R. 1102, demonstrates, however, that the remark here challenged is a more indirect and inconclusive reference to the failure of an accused to testify than any found in the adjudicated cases. It is so referable by rather a strained construction, and the case of Miller v. Commonwealth of Virginia, supra, contains an interesting discussion of a like statute to the effect that in its application the prosecuting officer is not to be too narrowly restricted in his discussion of the evidence in the case.

The question is to be viewed also in the light of the sole defense relied upon—insanity—and the utter unlikelihood that defendant would be expected to be offered as a witness by his counsel, who produced much proof as to his mental derangement.

■ In the light of all these circumstances, we are convinced no error to reverse is here made to appear. The case of Kilpatrick v. State, supra, adds support to this conclusion.

■ The witnesses Moorer and Anderson were not offered by the state as experts on insanity, but to testify that defendant was sane, after having first given the facts of their acquaintance and opportunity for observation, all of which was ample justification for the court's determination of their competency for such purpose. Parrish v. State, 139 Ala. 16, 36 So. 1012, 1020; Caddell v. State, 129 Ala. 57, 65, 30 So. 76; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193. And it may be added that the objection interposed contained no such ground that the witnesses were not shown to be experts. There was no error in this ruling.

■ Affidavit is offered on motion for new trial to the effect that one of the

prosecuting counsel in argument to the jury appealed for the protection of the womanhood of Lowndes county, and that the jury should say by their "verdict that Addie S. Norman is the last woman killed in Lowndes County." As above indicated, reference to this argument is first made on motion for new trial. There was no objection interposed, and therefore no ruling thereon invoked. Defendant's victim was a woman, and this fact formed the foundation for the appeal to the jury, which must be viewed as in the heat of debate. Such statements are usually valued by the jury at their true worth (Moulton v. State, 199 Ala. 411, 74 So. 454; Peterson v. State, 227 Ala. 361, 150 So. 156), and not expected to become factors in the formulation of their verdict. The language in Hobbs v. State, 74 Ala. 39, 41, that "trial courts would be treading on dangerous ground, were they to exercise a severe censorship over the line of argument counsel may pursue," is applicable here. Very clearly, defendant can take nothing by this ground of his motion.

■ Indeed, defendant insists that the matter of argument and method of examination of witnesses by the solicitor, in large part hereinabove related, was improper and reprehensible, and highly prejudicial to such an extent as to call for a new trial. Much stress is laid upon the case of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. But we find no parallel between that case and this. We are in full accord with the holding that a prosecuting officer should be fair and take no undue advantage of the accused. But the argument here advanced would require more, and would leave out of consideration the solicitor's conviction that he was discharging a duty to society by his prosecution of the accused whom he honestly believed guilty, and it would leave out of consideration the human element that in the heat of debate some harsh expression, though justified by the proof, fell from his lips. The proprieties must not be overreached. But, after all, we must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair. The solicitor is yet under duty to prosecute with earnestness and vigor—to strike hard blows, but not foul ones. Berger v. U. S., supra.

So viewed, we find nothing in the conduct of the solicitor throughout the trial which could be said to be reprehensible in the least. The crime was most revolting. All parties concerned were people of more or less prominence in the community. The trial appears from this record to have been fairly conducted, and with due decorum.

■ The insistence that M. R. Norman, uncle of John Norman, sat near the jury box during the trial, requires no extended consideration. His hearing was defective, and he states he sat in front of the door leading into the witness room, and about four feet from the nearest juror. He did not speak to any juror, and on the last day of the trial, during the argument, he was standing on the north side of the judge's stand, about 30 feet or more from the jury box.

■ Defendant on motion for new trial offered the affidavit of one Espy to the effect that while the jury were in the toilet room he saw some unnamed person, after asking permission of the deputy in charge, speak to one of the jurors; heard no conversation, and knew nothing of what was said, though the affidavit further states that this was without permission of the court. As the witness did not know this third party, it would seem his last observation concerning the matter of permission of the court would be of no value. As said in Powell v. State, 224 Ala. 540, 141 So. 201, the trial judge was under the duty to consider affidavits in the light of his own knowledge of the incidents. We cannot accept, therefore, at its full face value the statement in the affidavit that this third party spoke to the juror in the toilet room without permission of the trial judge. And whether he gave such permission is not made therefore to appear. If so, he doubtless knew of the occurrence, and that it was a matter of no moment as to the trial. But this aside, the affidavit is so general and indefinite as to the person as to render it practically impossible to be met by counterproof.

■ We find, however, affidavits of many jurors to the effect that no one discussed or mentioned the case to them, and the affidavit of juror Lyon to the effect that none of the jurors discussed the case with any person. We are of the opinion the reversal of the judgment cannot be rested upon the action of the court in overruling the motion for a new trial based upon this ground. Humber v. State, 19 Ala.

.App. 451, 99 So. 68; Arnett v. State, 225 Ala. 8, 141 So. 699; Leith v. State, 206 Ala. 439, 90 So. 687; Butler v. State, 72 Ala. 179; 16 Corpus Juris, 1162; Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803; Briggs v. Prowell, 215 Ala. 604, 112 So. 197; New York Life Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687; Beaird v. State, 219 Ala. 46, 121 So. 38; Bell v. State, 227 Ala. 254, 149 So. 687.

■ It is also urged a new trial should have been granted for the reason that the clothing worn by deceased when shot were found in the jury room in a box then uncovered, after conclusion of the case and discharge of the jury. These clothes were in a closed box, first placed near the judge's stand, but never offered in evidence. The room was a large one—16 feet in width and 40 feet long. The trial lasted two days, and no one seems to know how the box got in the room. Affidavits, however, disclose that the clothes were not examined, discussed, or referred to by the jurors, and the box played no part in their deliberations. No error to reverse here appears. Humber v. State, supra; Leith v. State, supra.

■ The affidavits of jurors rebut the charge that the jury mingled with other persons on the courthouse lawn or were guilty of any misconduct whatever. This ground of the motion is likewise untenable.

■ The oral charge of the court in connection with numerous written charges, given for defendant, covered all legal phases of the case for the jury's consideration. We need not, therefore, stop to inquire as to the correctness of the few charges refused defendant, for the reason that in any event their substance was embraced in the instructions to the jury, as above indicated. Deloney v. State, 225 Ala. 65, 142 So. 432; Ballard v. State, 225 Ala. 202, 142 So. 668.

We have here considered those questions presented by the record which we thought worthy of separate treatment, but, mindful of our duty in such matters, we have carefully reviewed the entire record, and find no error to reverse.

It results, therefore, that the judgment of conviction must be here affirmed.

Affirmed.

All the Justices concur.