29 So.2d 155

**WYRES v. STATE.**

**6 Div. 211.**

Court of Appeals of Alabama.
Feb. 11, 1947.

Jas. A. McCollum, of Tuscaloosa, for appellant.

632

Wm. N. McQueen, Atty. Gen., and· John O. Harris, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for murder in the first degree. He was by a jury found guilty of murder in the second degree and his punishment fixed at imprisonment in the State penitentiary for a term of ten years.

In the proceedings below the appellant filed a plea in abatement to the indictment, assigning some twelve grounds in support of the plea and its amendment.

Ground 4, and ground 1 in support of the amended plea, set forth that the grand jury was not drawn in the presence of the circuit clerk, as provided by law, but in the presence of a deputy circuit clerk.

A deputy clerk is the alter ego of the clerk, and has full power to transact all business of the clerk. Section 197 (2), Title 13, Code of Alabama 1940.

Ground 3 alleges that the grand jury was not drawn in the presence of the sheriff, as required by law, but in the presence of a deputy sheriff.

In general the acts of the deputy sheriff are the acts of the sheriff. He is the alter ego of the sheriff. Rogers v. Carroll, 111 Ala. 610, 20 So. 602; Hereford v. Brentz, 192 Ala. 465, 68 So. 350; Mosely v. Kennedy, 245 Ala. 448, 17 So.2d 536.

Ground 9, and ground 3 of the plea as amended allege that only forty-seven jurors were qualified, sworn and impaneled on September 5, 1944 from which to select a grand jury and petit juries which tried cases during that week.

The above two grounds are defective in that it is not alleged that the fifty jurors required to be drawn by the judge under Section 30 of Title 30, Code of Alabama 1940, were not drawn as required. The fact that only forty-seven were sworn and qualified in no way injured the appellant. Of the number of jurors qualified the judge, under Section 38 of Title 30, Code of Alabama 1940, had to first draw the names of eighteen jurors who were to be impaneled and sworn as grand jurors. It is nowhere alleged that this procedure was not followed in impaneling the grand jury which returned this indictment.

Ground 2 alleges that the jury box containing the names of jurors from which the grand jury was drawn was not kept in a safe in the probate office.

It is not alleged that appellant was in any way injured by the fact that the jury box was not kept in the probate office, or that any irregularity in placing the names or continuing the same in the jury box resulted or was present. Further, in reference to the keeping of the jury box Section 20 of Title 30, Code of Alabama 1940, provides that it "* * * shall be kept in a safe or vault in the office of the probate judge, and if there be none in that office, the jury commission shall deposit it in any safe or vault in the court house to be designated on the minutes of the commission." For aught appearing in the plea and ground 2 in support thereof, no noncompliance with the above provision is shown.

Grounds 1, 5, 6, and 7 of the plea, and ground 2 of the amended plea are all to the effect that the grand jury which returned this indictment was only the second grand jury impaneled in Tuscaloosa County during the year 1944; that it was impaneled on September 5, 1944, and that the indictment was not returned by it until December 11, 1944, a date after the term or session for which it was impaneled and beyond its legal existence.

Section 72, Title 30, Code of Alabama 1940, is as follows: "There shall be empaneled in every county having less than fifty thousand population, not less than two grand juries in every year, and when they have completed their labors, in its discretion the court may permit them to take a recess subject to the call of the judge of the circuit court, or chief justice of the supreme court, and may be reassembled at any place where the circuit court of the county is to be held. In all counties having over fifty thousand population, there shall be empaneled not less than four grand juries in every year."

We judicially know that Tuscaloosa County had a population of over fifty thousand during the year 1944. Appellant's counsel therefore argues that a grand jury in Tuscaloosa County could legally exist for only a quarter of a year. In our opinion this contention is without merit. In the first place, the provisions for the selection, drawing, summoning, or impaneling of jurors are directory merely, and not mandatory. Section 45, Title 30, Code of Alabama 1940. It is our opinion that the provision of Section 72, Title 30, Code of Alabama 1940, to the effect that in counties of over fifty thousand population there shall be impaneled not less than four grand juries a year was merely for the convenience of the citizenry of the more populous counties, and seeks to relieve the individual grand jurors from too great a personal sacrifice growing out of grand jury duty by providing, if needed, for four grand juries a year. If in the discretion of the circuit judge the business before the grand jury had not been of sufficient volume to unduly burden the members, by consuming too much of their time from personal affairs, then due regard for governmental economy and efficiency would dictate the continued use of a legally impaneled grand jury if its legal life had not been terminated by discharge or by operation of law.

Section 114 of Title 13, Code of Alabama 1940, in effect abolished specified terms of our circuit courts by providing that our circuit courts shall be open for the transaction of any and all business, or judicial proceedings of every kind at all times.

Prior to 1936 two six months terms per year existed by virtue of statutory enactments. See Gen.Acts 1915, p. 707, Section 6667, Alabama Code of 1923.

Under the doctrine of our Supreme Court, reflecting the common-law rule, the term of a duly impaneled grand jury continues until dissolved by order of the court, and in the absence of such order, until the expiration of the term during which it was impaneled, the expiration of the term automatically ending its life. Whittle v. State, 205 Ala. 639, 89 So. 43; Riley v. State, 209 Ala. 505, 96 So. 599. Once impaneled a grand jury was presumed to continue until discharged in one of the above-mentioned ways. Petty v. State, 224 Ala. 451, 140 So. 585.

Since terms of court as formerly existed have by statute been abolished, it is our opinion that now in this State a grand jury legally impaneled continues its legal existence until dissolved by order of court, and that such was the law at the time of the impaneling of the grand jury whose legal existence is questioned in this case.

■ While the above reasons going specially to the respective grounds to which they were addressed demonstrate the correctness of the action of the trial judge in sustaining the State's demurrer to the plea in abatement, his ruling in such premises was correct for the additional reason that it is now well established in this State that no objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment, and no objection can be taken to an indictment by plea in abatement except on the ground that the grand jurors who found the indictment were not drawn by the officer or officers designated by law to draw the same. Sections 278 and 285, Title 15, Code of Alabama 1940; Whitehead v. State, 206 Ala. 288, 90 So. 351; Troup v. State, ante, p. 309 26 So.2d 611, certiorari denied 248 Ala. 143, 26 So.2d 622.

The appellant with his wife and two infant children lived in what was formerly a small store building located very close to the public highway in Vance, a small community in Tuscaloosa County.

The evidence for the State was directed toward showing that Carl Hubbard, the deceased, and appellant had been together the morning of the killing for the purpose of trying to repair Hubbard's automobile, and just before the shooting had returned to Vance. Wallace Tingle, the chief witness for the State, testified that he witnessed the shooting from a distance of about 148 feet away. According to Tingle he observed the deceased walking down the highway with a water bucket in his hand. He heard appellant, from a point in the highway in front of his home, call out, "If you come back up here, I will kill you." The deceased was at this time about twenty steps down the highway from appellant. When appellant made the above statement the deceased turned to look back at him and appellant shot deceased with a rifle. The bullet struck deceased in the forehead near the left eye, killing him instantly.

According to Tingle the deceased had nothing in his hands other than the bucket.

Several witnesses who viewed deceased's body very shortly after the shooting testified that deceased was lying in the road, the bucket nearby. When some of these witnesses returned for a second view a pint bottle, unstopped, containing a small quantity of moonshine whiskey was observed standing between deceased's legs. The bottle had not been there when they first viewed deceased.

The evidence for the defense was to the effect that appellant and deceased, when they were unable to repair deceased's automobile, had returned to appellant's home. A man named Martin Edmonds, an acquaintance of appellant's, and who was very drunk, had come into the house with the deceased. The appellant had gone outside to chop some wood, and when he re-entered the house he heard his wife protesting to Edmonds because of his conduct toward her. Edmonds continued his harassment of appellant's wife and appellant eventually knocked him down and then "threw" him out of the house. The deceased thereupon told appellant that Edmonds was a "good old man" and that if appellant wanted to fight to fight him (deceased). The deceased was drunk, and after threatening to slap hell

out of appellant fell on a bed on which was lying the young baby of the Wyres. Upon Mrs. Wyres cautioning deceased not to injure the baby the deceased replied, "Damn the baby." The appellant then asked deceased if he would carry Edmonds home after he, appellant, had washed the blood off his face. The appellant obtained a bucket and started for the door. The deceased then grabbed for a rifle standing in the corner of the room, but appellant wrested it away and ran out of the house carrying the bucket and rifle with him, and with the deceased in hot pursuit. The appellant saw that deceased was gaining on him, with a whiskey bottle in his left hand in striking position. Appellant then cut off the road, slipped on a clay bank on the side of the road and went down on one knee. As deceased came within three to five feet of him, with the bottle in his upraised hand the appellant aimed the rifle at his head and fired.

■ The evidence presented by the State and by the defense being in irreconcilable conflict the determination of the true facts surrounding this killing was within the sole province of the jury. If the evidence presented by the State be believed under the required rule it fully supports the jury's verdict of guilty of murder in the second degree.

■ In rebuttal to the character testimony offered by the defendant a number of witnesses for the State testified that appellant's character was bad. The character testimony of two of these witnesses was not limited to the time prior to the difficulty. However, examination of their testimony shows that no injury resulted to appellant. No objection was interposed to the question propounded to the witness Willie Richie, deputy sheriff of Bibb County, until after he had answered. His answer made it clear that he was excluding a three year period prior to the trial in giving his testimony as to appellant's character. The court was therefore correct in overruling appellant's motion to exclude Richie's testimony.

■ The question propounded to John Smith, a resident of Bibb County, was: "Do you know his [appellant's] general character and reputation in the community in which he has lived down there in Bibb County based on what folks say about him?"

No injury could have resulted to appellant in the action of the court overruling his objection to this question since it had been clearly established by much prior testimony that the appellant had left Bibb County and resided in Tuscaloosa County for some three months prior to his difficulty with the deceased.

■ During his argument to the jury the special prosecutor made reference to, or began to make reference to deceased being a man of family, as the record shows the following statements: "That he has deprived this widow and her children * * * (interrupted)"; "Before November 29, 1944, she had a husband and as a result * * * (interrupted)"; "He has killed a man who has children and a family * * * (interrupted)." The court excluded all of the above statements from consideration by the jury. He also instructed them that the sole question before them was the guilt or innocence of this appellant, that deceased's family in no way entered into the question. Admitting that the above line of argument went beyond the proper forensic boundaries, we are of the opinion that the trial court's action rendered speculative any injury resulting to appellant to the extent we do not feel justified in reversing this case because of the above incidents. The trial of a hotly contested law case is set in the atmosphere of a combat rather than of a social event. The emotional tenseness of the situation may sometimes result in counsel overstepping proper bounds of argument. Proper rulings and instructions to the jury by the trial judge may eradicate any injury done to appellant's case by such breach of legal rules, or at least render such injury highly speculative.

■ The record also shows the following occurrence during the special prosecutor's argument to the jury:

"Now, gentleman, it is rather amusing to me * * * Mr. McCollum got this defendant to testifiy that when he got down on the bank, he got a little mud on his breeches when he got up by the side of that thing, but gentlemen of the jury * * * (interrupted)

"Mr. McCollum: I object to what Mr. McCollum got him to do. There is not any evidence that I got him to do it, and as grounds of objection we assign the following: That it accuses the defendant of committing perjury and his attorney of being guilty of subornation of perjury and is highly prejudicial and tends to create contempt for the defendant and his attorney.

"Mr. Wright: He testified to it.

"Mr. McCollum: I object to that on the grounds we have just assigned.

"Court: Overruled.

"Mr. McCollum: Except and we make a motion to exclude that argument from the jury on the grounds assigned as objections to the argument, separately and severally.

"Court: Overruled.

"Mr. McCollum: Except."

We think appellant's counsel's interpretation of the above remarks overly sensitive. As we read them they could just as well mean that appellant's counsel had elicited such testimony in his examination of the appellant, not that he had been the author of such testimony. Such statements are usually valued at their true worth by a jury.

▉ No error resulted in the court's refusal to give requested written charge No. 12 as the same was adequately covered in the court's oral charge, and in appellant's requested written charges Nos. 31 and 32 which were given by the court.

▉ Written refused charges numbers A, B, and C were general affirmative charges as to murder in the first degree, murder in the second degree, and manslaughter in the first degree, respectively, and were properly refused under the developed evidence of this case, as was appellant's requested charge D, which was the general affirmative charge.

▉ Appellant's requested charges Nos. 23, L, N, and P were properly refused as they were tainted with all or some of the following vices, i. e. argumentative; incorrectly stated legal principles by omitting essential elements; were invasive of the province of the jury; assumed as true facts in dispute; or were abstract under the evidence of this case.

After careful examination of the trial court's oral charge we are of the opinion that the charge as a whole adequately covered the legal principles and law involved in this case, and was in every way fair to appellant. Appellant's exceptions to certain portions were therefore in our opinion without merit.

Among the one hundred and sixty-four grounds set forth in support of appellant's motion for a new trial it is alleged that appellant was prejudiced in the trial below by the presence within the bar of the deceased's wife and children. Affidavits of several persons to this effect supported this allegation. The State countered with affidavits of several persons to the effect that deceased's children were out of the court room during most of the trial, but on the other hand the appellant's wife and two infant children were by him during a large part of the proceedings below.

▉ Such stage settings have no part in a trial. Unfortunately they do occur. The record does not disclose that appellant at any time made any objection to the presence of the deceased's family within the bar rail during the trial. His complaint of this situation comes for the first time in his motion for a new trial. We think it was then too late. At any rate there is nothing more before us for review than the experienced trial court's discretionary action in passing on this ground of the motion for a new trial. The trial court was in better position to weigh the validity of the alleged prejudicial matter than are we. Indulging the presumptions in favor of the court's decision we must hold there was no error in overruling the motion for a new trial on this ground. Dempsey v. State, 15 Ala.App. 199, 72 So. 773; Thorne v. State, 21 Ala.App. 57, 105 So. 709; Mullins v. State, 24 Ala. App. 78, 130 So. 527; Adams v. State, Ala. App., 26 So.2d 216.[1] This same principle also disposes of that ground of the motion for a new trial, supported by affidavit of the appellant alleging that deceased's sister winked at one of the jurors during the trial, and that the juror winked back. By affidavit the sister denied categorically any such occurrence.

---

[1] Ante, p. 367.

Consonant with our duty we have examined this voluminous record with care. The trial court's ruling was invoked innumerable times. In our opinion the trial court was extremely careful, if not liberal, in protecting appellant's rights. We have discovered nothing in the trial court's action during the trial of which this appellant can legitimately complain. Likewise we are of the opinion that the trial court was correct in overruling appellant's motion for a new trial. Of the one hundred and sixty-four grounds assigned as error in supporting this motion we have written only to a few. The remaining grounds we consider so patently without merit as to require no discussion.

Affirmed.