318 So.2d 768

**Stewart WEAVER**

v.

**STATE.**

**8 Div. 385.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Rehearing Denied Aug. 19, 1975.

William J. Baxley, Atty. Gen. and Kermit M. Downs, Asst. Atty. Gen., for the State.

SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant, Stewart Weaver, was indicted jointly with one Charles E. Guntharp for murder in the first degree for that they killed James Floyd Davis by shooting him with a pistol. The trials were separate. The instant appellant was convicted by the jury of manslaughter in the first degree, an offense embraced in the indictment, with punishment fixed at ten years imprisonment.

It appears from the evidence that Guntharp suspected the victim of having a romantic affair with his (Guntharp's) wife.

Ralph E. Slate, Decatur, for appellant.

Motivated thereby, Weaver arranged a meeting between Guntharp and Davis which took place at a shopping center in Morgan County. Both Guntharp and Weaver were present.

We observe from the evidence that Guntharp fired the fatal shot resulting in the death of Davis. The State asserted in the trial that Weaver was an accessory to the homicide and was a principal pursuant to Title 14, Section 14, Recompiled Code, 1958.

We will not delineate the evidence which appears in two volumes filed in this Court. The trial was vigorously prosecuted and defended. We will advert to the argument of the prosecutor and rulings of the Court.

We quote from the record as follows:

"MR. SLATE: Now, we object to any statements by the counsel as he walked over to the counsel table and pointed at this man, 'not only broke the laws of man, but God Almighty as handed down to Moses at Mount Sinai,' and again pointing at the defendant and saying, 'and he is doomed to the everlasting death of hell and damnation for it,' as being outside the prerogative of the district attorney, and we move to exclude that and ask for an instruction, your Honor.

"THE COURT: Sustained."

\* \* \* \* \* \*

"MR. SLATE: I believe at this time I will have to object to the statement by the attorney general that we haven't gotten many inconsistencies of statement of the defendant, and if the lawyer had got there before we talked to him, we wouldn't have had any inconsistencies."

\* \* \* \* \* \*

"MR. SLATE: Now, I believe that I am going to object to the statement that Mr. Slate is knowingly misleading you and that is what he is paid to do.

"MR. BAXLEY: Well, if that's the case, I will apologize and withdraw that."

\* \* \* \* \* \*

"MR. SLATE: No, we object to pointing to the defendant and saying that the reason that he didn't make the phone call, or that he didn't go to the hospital was because he knew that he was guilty under the law of helping or conspiracy or aiding and abetting, that caused that man's death, and he knows that now, and he knows that today. And we object and we move to exclude.

"THE COURT: I will let him argue any inference.

"MR. SLATE: We respectfully except to any of the Court's rulings."

\* \* \* \* \* \*

"MR. SLATE: Now, we are going to object to the statement that they took. And the attorney general—certainly he is going to say something in there favorable to him, for the law, specially with this lawyer lurking around the office door, and we object.

"MR. BAXLEY: I withdraw my statement and apologize. I didn't mean to insinuate Mr. Slate was lurking around anywhere."

\* \* \* \* \* \*

"MR. SLATE: We object to the statements by the attorney general that Mr. Slate in his closing argument drew a smoke screen, and the reason that he did it was because he knew his client was lying. And we would like to at this time make a motion for a mistrial.

"THE COURT: Well, I deny your motion for a mistrial.

"MR. SLATE: We except.

\* \* \* \* \* \*

"MR. SLATE: We object to the argument of counsel that Stewart Weaver —Did Stewart Weaver ever tell you from the witness stand he was sorry that this happened. That he had sent a cake by his wife to the Davis family showing that he was sorry this was happening.

Or did he say from the witness stand that he was sorry that the Davis children had no father or words to that effect, and we object to it as outside the scope of the evidence.

"THE COURT: Overruled.

\*   \*   \*   \*   \*   \*

"MR. SLATE: Now then, your Honor, what he is saying now is not only illegal, but it borders on something worse when he says to a jury, don't you know that if Stewart Weaver were innocent and just an innocent bystander, that he would beat down the doors of this courthouse to get on the witness stand and testify in the trial of Charles Guntharp. And we move that that be excluded and make a motion for a mistrial.

"MR. BAXLEY: Your Honor, he mentioned that very point in his opening argument, and I feel like it is legitamate [sic] for us to mention the fact about him being subpoenaed and the fact why he wouldn't let him take the stand. He said that he wouldn't have let him take the stand if he wanted to, if I recall that is what Mr. Slate said, and I think that we have a right to answer that.

"THE COURT: Overrule the objection.

"MR. SLATE: Now, your Honor, we object to the attorney general saying that if you turn this man loose, he is a suspended police officer and he will be going down there wanting his job back. That is what we are objecting to, and that as being an inference that the man charged with murder would be put back on the police force, and it would make it look bad.

"THE COURT: Overruled."

This Court observed in *Lowman,* 38 Ala.App. 612, 91 So.2d 697, as follows:

"However, in his argument to the jury the Solicitor made reference to the "widow and a bunch of little children being left to raise,' and 'his wife and six kids left and hungry.' Defendant objected

to this argument and the court overruled the objections. These remarks were highly improper and were calculated to inflame the minds of the jury. 'Such unauthorized remarks have no place in a trial where on the one hand a defendant's life or his liberty is involved, and on the other the proper administration of the law is concerned.' *Thomas v. State,* 18 Ala.App. 268, 90 So. 878, 880. See also *Wyres v. State,* 32 Ala.App. 630, 29 So.2d 155."

We advert to *Blue v. State,* 246 Ala. 73, 19 So.2d 11, wherein the Supreme Court made pronouncements which we think are applicable to the instant appeal of the prosecution aforequoted. We quote excerpts therefrom as follows:

"In determining the question before the court, we do not think that each of the above statements must be analyzed separately to see whether or not, if standing alone, it would create the ineradicable bias or prejudice. We think, on the contrary, that these various statements should be considered together to determine whether or not, in their cumulative effect, they created a prejudicial atmosphere. It may be that some of the statements of the solicitor were replies in kind to statements made by counsel for defendant, and we fully recognize, as said in *Arant v. State,* 232 Ala. 275, 167 So. 540, 544, 'a trial is a legal battle, a combat in a sense, and not a parlor social affair.' The record shows that the presiding judge exercised great patience and in most of these incidents did what he could to disabuse as far as possible the minds of the jury of any prejudicial impression; but it is our duty to see to it that trials are free from prejudice and passion and that the courthouse means that where a conviction is obtained, it is obtained in an impartial atmosphere. The foregoing remarks were made in the presence of the jury. Considering them in their cumulative effect, we think that they were calculated to inject the poison of bias and prejudice into the minds of

the jury. They created an atmosphere of bias and prejudice which no remarks by the court could eradicate. This is not justice and prejudicial error has been shown."

*Kabase v. State,* 244 Ala. 182, 12 So.2d 766; *Pointer v. State,* 24 Ala.App. 23, 129 So. 787, 789, 790; *DuBose v. State,* 148 Ala. 560, 42 So. 862, 863; *Mitchell v. State,* 28 Ala.App. 119, 180 So. 119; *Emerson v. State,* 30 Ala.App. 248, 4 So.2d 183; *Cassemus v. State,* 16 Ala.App. 61, 75 So. 267, 268.

We also advert to *Fisher v. State,* 23 Ala.App. 544, 129 So. 303, wherein this court held it was error to overrule appellant's objection to the argument of the solicitor to the jury trying the case, to wit:

" * * * 'Gentlemen of the Jury when you go out there to make your verdict don't forget the children which defendant left fatherless, made orphans of and left without a breadwinner—they are entitled to some consideration too.' "

It is our opinion that the cumulative effect of the aforementioned argument was to create a prejudicial atmosphere which we hold was error to reverse.

We pretermit considering other contentions with respect to error by the trial court. Suffice it to say that these same contentions may not be predicated by rulings at the next trial.

The judgment below is hereby

Reversed and remanded.

TYSON and HARRIS, JJ., concur.

DeCARLO, J., concurs in result only.

BOOKOUT, J., concurs specially with opinion.

CATES, P. J., recuses himself.

BOOKOUT, Judge (concurring specially):

I disagree with the majority opinion that the actions of the Attorney General created an atmosphere of prejudice in this case which requires reversal.

It is the duty and responsibility of the Attorney General and the District Attorneys to prosecute criminal cases with vigor and with zeal. Very often in the heat of a trial, the attorneys for both sides drift out of bounds with their arguments. The trial judge is there as an impartial referee to see that neither side does this.

If either counsel crosses the bounds of legal argument into a questionable area, upon objection, the trial judge should limit the scope of such argument and where appropriate, admonish the jury to disregard such statements or give them other proper instructions.

To quote from *Arant v. State,* 232 Ala. 275, 167 So. 540 (1936):

"Counsel for the state and defendant are allowed a rather wide latitude in drawing their deductions from the evidence. . . .

". . . Such statements are usually valued by the jury at their true worth . . . and not expected to become factors in the formulation of their verdict. . . .

". . . But, after all, we must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair. . . . "

There are many reported cases dealing with what arguments are permissible on behalf of the prosecution. Many of those decisions amount to no more than the appellate courts exercising 20–20 hindsight without the benefit of having been present during the "combat" of the trial, as was the trial judge. Since the trial judge had the opportunity to see the attorneys during argument, observe their demeanor and any visible effect their comments may have had upon the jury, we should exercise extreme caution in reviewing his rulings.

Many of the comments herein complained of, while hard and hitting, were nevertheless permissible inferences which could have been drawn from the evidence. We should only be persuaded to a reversal where an argument goes to prejudicial matters not in evidence which either cannot be eradicated from the minds of the jurors, or being eradicable, where the trial court overrules objection thereto or fails to properly instruct the jury. See: *Allred v. State,* 291 Ala. 34, 277 So.2d 339 (1973).

I concur only in the result of the majority opinion, based upon the ruling of the trial court in reference to argument concerning the wife and fatherless children of the deceased. Such argument was not based upon the evidence, and there is a clear-cut precedent that such an argument is prejudicial whether or not it was inadvertently made during the heat of the trial.

I am of the opinion that even though prejudicial, it was such that could have been eradicated from the minds of the jury by proper instruction of the court. The court gave no such instruction and in fact, overruled the defendant's objection to such argument. Thus, pursuant to both *Lowman* and *Fisher,* cited in the majority opinion, supra, the case is due to be reversed.