BOOKOUT, Judge.
Appellant was convicted of grand larceny and buying, receiving and concealing stolen property. He was sentenced to six years imprisonment.
The key details of the offense came from the testimony of an accomplice, Harold Lawrence. He stated that he met appellant late on the night of April 7,1976, at a place called the Bungalow in Opp, Alabama (Cov-ington County). From there, they each drove a truck to Troy, Alabama (Pike County) to the premises of a club formerly called the Boomerang II.
*1182 On arriving around 1:00 A.M., the appellant opened the building with a key and entered. The two disconnected and took a Frigidaire ice maker and a four-door stainless steel Victor cooler from the premises and loaded them on the truck which appellant was driving (a Tops Vending Company truck with an hydraulic lift). They next took from the building a Scottsman ice machine and a coffee maker and loaded them on Lawrence’s truck. Appellant then locked the building, and they drove back to Covington County to the Cool Springs Church in Opp.
On arriving at the church, appellant parked his truck and both parties went to Lawrence’s house in his truck. There they unloaded the Scottsman ice machine and coffee maker and returned to the church where appellant got his truck. From the church, the two drove to “J. P. Davis’ chicken house” where they unloaded the cooler and the Frigidaire ice maker.
Around mid-April, appellant called Lawrence and had him take the Frigidaire ice maker to Green Bay (in Covington County) and install it in a grocery store where a Mr. Dwight Bryan “sold beer and ice and had pool tables.” Bryan paid Lawrence $35.00 to install the machine and was to pay appellant one dollar per day rent on the machine. Lawrence was qualified as having been in the air conditioning and refrigeration repair business around twenty years and having trafficked in ice machines such as the one in question. He estimated the reasonable market value of the Frigidaire ice maker to be $300.00.
James and Edward Armistead testified that appellant talked with them in a local restaurant in Opp in late July 1976. They were in the air conditioning and refrigeration business, and appellant asked them to go to Green Bay, pick up a Frigidaire ice maker, repair it, and to hold it until he called them for it. Ed Armistead additionally testified that when he and his cousin James went to Green Bay to pick up the machine, he was told that the Sheriff had already come and gotten it. He further testified that around Christmas, he was in the former Boomerang II club working on the heating system, and he observed a Frigidaire ice maker installed on the premises. He also observed a stainless steel Scottsman ice machine on the premises.
Testimony and exhibits show that 231 Truck Stop, Inc., was formed by incorporating papers dated March 4,1976, wherein the incorporators were Louie Grimes, Bill S. Grimes and Floyd Phillips. By deed dated February 14, 1976, the premises of Boomerang II were transferred to 231 Truck Stop, Inc., by Porter M. Moore and Ann M. Grimes.
Billy Grimes, Secretary-Treasurer of 231 Truck Stop, Inc., testified that the corporation had purchased the premises in question in order to convert it into a truck stop. He had done some work inside the building on several occasions. Neither he nor the board of directors had authorized the appellant or Lawrence to take anything from the building. However, he had not inventoried the property in the building and did not know if a Frigidaire ice maker was there when he first went to the building.
Deputy Sheriff Jim Stallings testified that in August 1976 he picked up an ice maker from the Green Bay Grocery, and the machine was presently at the county jail. He authenticated a photograph of the machine which was put in evidence. Harold Lawrence testified that he was presently in the county jail, and the ice maker he had seen in the jail was the same Frigidaire ice maker which he and the appellant had removed from the Boomerang II premises and which he later installed at the Green Bay store.
At the end of the State’s evidence, counsel for appellant moved to exclude the State’s evidence as to the grand larceny count on the ground that if a larceny occurred, it was in Pike County and thus Covington County was the wrong venue. The trial court properly overruled the motion. Title 15, § 98, Code of Alabama 1940; Aaron v. State, 39 Ala. 684 (1866).
Appellant’s defense was that the machine was removed from the Boomerang *1183 II premises prior to its sale to 231 Truck Stop, Inc., and he had authority from Mike Moore to remove the machine. This presented a clear-cut conflict between the State’s evidence and that of the defense which was resolved by the jury in the State’s favor.
I
Appellant contends that the evidence was insufficient to support the two charges. We disagree. The elements of grand larceny as set out in Title 14, § 331, Code of Alabama 1940, were proved by the evidence set out above.
From the evidence presented, the jury could have reasonably concluded the following: The premises and personal property of the Boomerang II club were sold to 231 Truck Stop, Inc., prior to April 8, 1976, when the larceny occurred. On that date, neither the appellant nor his former employer owned the property. The Frigidaire ice maker was in the building prior to the sale and neither the secretary-treasurer nor the board of directors of the new corporation had authorized the appellant or anyone else to remove anything from the building. The removal of the machine took place at 1:00 A.M., an unusual hour to say the least. Appellant and his accomplice concealed the machine in a chicken house until the accomplice was sent by appellant to connect it in a store in Green Bay. Appellant rented it to the store on a per diem basis. Its value was established at $300.00.
The facts of the theft, coupled with the concealing of the machine by appellant and his accomplice, likewise proved the essential elements of the second count of the indictment pursuant tó Title 14, § 338, Code of Alabama 1940. Such testimony clearly presents a question for the jury and, therefore, appellant’s requests for the affirmative charge on the two counts were properly refused and his motion for a new trial on the same grounds was properly overruled. Cook v. State, 56 Ala.App. 250, 320 So.2d 764 (1975); Yoemans v. State, 55 Ala.App. 160, 314 So.2d 79 (1975).
II
Appellant contends the trial court erred in allowing the State to impeach witness Mike Moore on immaterial matters. The witness, testifying for the appellant, related some facts concerning his purchase of the Boomerang II club from its former owners and his later sale of the premises to the 231 Truck Stop, Inc. On cross-examination, the trial court allowed the State to go into further details involving the transaction by bringing- out the fact that Boomerang II, Inc., got behind on its mortgage payments, and the owners of 231 Truck Stop, Inc., paid off the delinquency and purchased the premises from the witness. Appellant contends that such was an improper impeachment of his witness. Had the State elicited some immaterial testimony from the witness and then called another witness to dispute the immaterial matter, the appellant’s contention would have been well-founded. Frazier v. State, 48 Ala.App. 210, 263 So.2d 511, cert. denied 288 Ala. 743, 263 So.2d 516 (1972). However, such is not the case here. Regardless of the trial court’s reason for admitting the testimony, it was not a contradiction of the witness’ prior testimony. Instead it is an expansion of facts touched upon in earlier testimony.
The extent of cross-examination is usually a matter within the sound (though somewhat limited) discretion of the trial court. The legal limitations to cross-examination are set out in Ball v. State, Ala.Cr.App., 337 So.2d 31, cert. quashed, Ala., 337 So.2d 39 (1976). We fail to see an abuse of the trial court’s discretion in this instance. Likewise, whether or not the point of cross-examination was material, we fail to see its prejudicial effect here. Rule 45, Alabama Rules of Appellate Procedure.
III
Appellant contends that the cumulative effect of improper arguments by the prosecutor should have mandated a mistrial, and the trial court’s refusal to grant such resulted in error.
The first instance complained of occurred as follows:
*1184 MR. COOK: Now, what Mr. Lawrence has done here today, ladies and gentlemen, is he has taken the witness stand and he has testified agaipst Rex Moore’s right arm.
“MR. LINDSEY: We object to that, if the Court please.
“THE COURT: I sustain.
“MR. LINDSEY: And move for a mistrial.
“THE COURT: I deny the motion for mistrial, but instruct the jury to disregard that remark in its entirety and consider it for no purpose whatsoever.”
There was evidence that the appellant was working for Rex Moore and was driving a truck from one of Moore’s companies, Tops Vending Company. The ice maker was carried away from the Boomerang II premises in that truck. Whether or not it is a logical or reasonable inference which may be drawn from the evidence that appellant was “Rex Moore’s right arm,” it certainly was not so prejudicial as to mandate a mistrial in view of the trial court’s ruling in favor of the appellant and his admonition to the jury to disregard the comment.
The second instance complained of appears as follows:
“MR. COOK: Now, ask yourself who we’re dealing with here today. We are not dealing with just Horace Weeks, we are dealing with somebody a lot bigger

“MR. LINDSEY: We object to that, if the Court please.
“THE COURT: Yes, sustained.
“MR. LINDSEY: And move for a mistrial.
“THE COURT: I’m going to deny the motion for mistrial, and instruct the jury to disregard it and Mr. Cook any similar argument to that again will bring a mistrial.” '
The two instances above would not, in our opinion, create an atmosphere so prejudicial to the appellant that it could not be eradicated by the admonition of the trial judge. The trial judge promptly sustained appellant’s objection and gave a proper and, we think, sufficient admonition to the jury under the circumstances of this particular case. See: Weaver v. State, 56 Ala.App. 29, 318 So.2d 768, cert. denied 294 Ala. 773, 318 So.2d 772 (1975); Madison v. State, 55 Ala.App. 634, 318 So.2d 329, cert. denied 294 Ala. 764, 318 So.2d 337 (1975); Allred v. State, 291 Ala. 34, 277 So.2d 339 (1973).
AFFIRMED.
All the Judges concur.