HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at ten years in the penitentiary. At his arraignment, attended by counsel, he pleaded not guilty. After sentence was imposed, he gave notice of appeal. He is in this Court with a free transcript and is represented on this appeal by trial counsel.
At the conclusion of the State’s case appellant made a motion to exclude the State’s evidence on the ground that the State failed to prove a prima facie case of robbery against appellant. This motion was overruled and denied.
The evidence is in hopeless conflict. The evidence presented by the State made out a clear-cut case of robbery, and only a jury could resolve the conflicting evidence and arrive at a verdict as to the guilt vel non of appellant. Appellant presented a strong alibi and his alibi was supported by several witnesses.
Mr. Daniel R. Hawk testified that he owned and operated the Hawk Brokerage Company and lived at 3394 Cloverdale Road in Montgomery, Alabama, and had a cabin on the Alabama River on Highway 143 across the Tyler Goodwyn Bridge where he often spent some time relaxing. He stated that he worked late on the night of September 24, 1975, leaving his office some time after 11:00 p. m. He went to the Diplomat Inn between 11:30 and 12:00 o’clock to watch the floor show and during the show he drank two bourbons and water. He left the Diplomat at about 2:00 a. m. and drove across the street to the Krystal where he ordered six cheeseburgers and two half-pints of chocolate milk. While he was eating, two men and two women came in and sat near him. He stated that he had never seen these men and women before but he later learned that one of the men was appellant and the other man was named James Payton Judge.
The robbery victim further testified that the man named Judge told him that he looked tired and sleepy and offered to drive him home. He told Judge he was not going home but was going to spend the night at his cabin and that he did not need anyone to drive him. Judge kept insisting that they drive him to the place he was going and Mr. Hawk finally consented, and the three men left the Krystal with Judge driving. Mr. *541 Hawk was in the middle on the front seat between the two men. The two women followed them in another car. That about a quarter of a mile before they reached the Tyler Goodwyn Bridge, both men started beating Mr. Hawk and going through his pockets and they removed his wallet containing $35.00, his identification and other valuable papers. They stopped the car at a place across the river formerly known as Joe’s Place or Wander Inn which had been closed for some time. The two men pulled Mr. Hawk out of his automobile and told him they were going to throw him in the Alabama River, saying, “This is your last day.” The bandits took two automobile tires, a Polaroid camera, brief case, a diamond ring, a wedding band, a tool box and a watch. The total value of the property taken in the robbery exceeded $1,000.00. They then pulled Mr. Hawk to an old barbecue pit which was constructed out of brick and slammed his head against the brick pit and threw him down an embankment toward the river. They told him not to move for five minutes.
Mr. Hawk further testified that he heard the other car leave in the direction of Mill-brook, and he ran to a place known as Harbor Light Inn and used the telephone to call the Montgomery Police Department. Two police officers responded to the call and began investigating the robbery. They got a description of the men from Mr. Hawk. He described appellant as being about six feet tall and he weighed approximately 185 pounds. That he was dressed in a yellow shirt and green pants. He stated that the other bandit was about six feet tall and weighed about 240 pounds. That he was wearing a light blue shirt with little checks in it and had on blue pants.
On November 29, 1975, Mr. Hawk was shown a number of photographs of suspects and identified appellant in one of the photographs. Twenty minutes later he viewed a lineup of five men who were dressed alike and immediately identified the number three man in the lineup as appellant. Mr. Hawk also made an in-court identification of appellant as one of the men who beat and robbed him in the early morning hours of September 25, 1975.
Mrs. Gidget Pierce testified that she worked at the Krystal on Norman Bridge Road and that she knew Mr. Hawk as he often ate there. She stated that Mr. Hawk came in the Krystal some time after 2:00 a. m. on September 25, 1975, and placed his usual order of six cheeseburgers and two chocolate milks. She identified appellant as being in the Krystal at the same time with another man and two women. Later she was shown a photograph of five men in a lineup and she immediately picked out the number three man as appellant. She, too, made an in-court identification of appellant as being one of the men who came into the Krystal with another man and two women. Her description of the wearing apparel of the two men was almost identical to the description given by Mr. Hawk.
Detective H. C. Norton testified that he showed Mrs. Pierce a five-man photograph and she identified appellant as the number three man in the photograph.
Officer Ron Holt testified that he conducted a lineup of five men dressed alike and being of similar height and weight. That Mr. Hawk viewed the lineup and immediately identified the number three man as appellant.
Appellant offered three witnesses in support of his claimed alibi. They all testified that they knew appellant and were with him on the night of September 24,1975, and the early morning hours of September 25, at the Autauga Lounge on Highway 4 in or near Prattville. That appellant was shooting pool that night and morning at a time when it would have been impossible for him to have been involved in a robbery of Mr. Hawk. Onp of the alibi witnesses, Billy Brown, stated that he remembered the occasion because he lost $147.00 to appellant shooting pool. The other two alibi witnesses, Barbara Black and Geneva Tatum, stated that appellant was in the Autauga Lounge playing pool in the wee hours of the morning of September 25,1975. .Both testified they did not know about appellant’s trial for robbery in April, 1976, until they *542 were notified to be in Court a few days before the trial. Both further stated they had not discussed their testimony with anyone until the day of the trial.
Appellant testified in his own behalf and his testimony was the same as the other alibi witnesses. He denied that he had anything to do with the robbery.
On cross-examination he admitted that in 1971 he was convicted of burglary of an automobile and received a thirteen-month sentence in the penitentiary. He further admitted that he was again convicted of burglary of an automobile and received a three-year sentence in the penitentiary.
An accused is not entitled to counsel at a preindictment lineup. Houston v. State, 49 Ala.App. 403, 272 So.2d 610; Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.
Conflict in alibi testimony and identification testimony in a robbery conviction was peculiarly within the province of the jury to resolve. Smith v. State, 53 Ala.App. 27, 296 So.2d 925; Price v. State, 53 Ala.App. 465, 301 So.2d 230; Lindsey v. State, Ala.Cr.App., 331 So.2d 797.
In Willcutt v. State, 284 Ala. 547, 226 So.2d 328, the Supreme Court held:
“The scintilla rule does not apply in criminal cases. There must be substantial evidence tending to prove all the elements of the charge. Ex parte Grimmett, 228 Ala. 1, 152 So. 263. The burden is on the State to prove beyond a reasonable doubt that the crime has been committed and that the defendant was the person who committed it. Jarrell v. State, 251 Ala. 50, 36 So.2d 336. The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Byrd v. State, 213 Ala. 333, 104 So. 830.
“We cannot say in the instant case that there was not enough evidence to allow the jury to draw the inference that the defendant was the person who committed this robbery. The defendant presented a strong case in support of his alibi. The testimony of his witnesses was in direct conflict with the testimony of the State’s witness. Yet the State’s witness made a positive identification of defendant as the person who robbed and burned him. The State presented substantial evidence and the jury had before it an adequate basis for drawing inferences and conclusions against the defendant. It is for the jury, not the trial court or this court, to find the facts and to determine guilt or innocence. The State presented sufficient evidence upon which the jury could base its verdict.”
Where the evidence raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain the conviction, the denial of a motion to exclude the State’s evidence, refusal to give the affirmative charge and overruling a motion for a new trial, do not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843.
It was in the trial court’s discretion to have the testimony of certain witnesses read to the jury after their retirement and upon their request. Broglan v. State, 23 Ala.App. 219, 123 So. 109; Jenkins v. State, 51 Ala.App. 521, 287 So.2d 233.
After the jury has reported its inability to agree on a verdict it is incumbent on the trial judge to exercise extreme care in reopening the case for the introduction of further testimony or in permitting any evidence to be restated or reread to the jurors, so that, undue emphasis will not be placed on portions of the testimony. The Court permitted the Court Reporter to read the testimony of Gidget Pierce. It was the testimony of this witness that the jury was interested in having read back to them. Since there was some conflict in the testimony of Mrs. Pierce and the statement she gave to Officer Norton the Court considered it to be fair and proper for Norton’s testimony to also be read to the jury by the Court Reporter. It is, therefore, clear that in following this procedure the trial court exercised the sound discretion vested in him and avoided any undue emphasis being placed on any portion of the testimony.
*543 There was no error in allowing the State witnesses to identify appellant from photographs exhibited to them by the investigating officers. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court said:
“Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method’s potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, 18 L.Ed.2d 1199, and with decisions of other courts on the question of identification by photograph.”
We have carefully searched the record and find no reversible error. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.