HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at fifteen years in the penitentiary. Appellant was formally arraigned on August 15, 1975, in the presence of his Court-appointed lawyer, and pleaded not guilty. His case was set for trial on September 9, 1975, and was passed from time to time to May 10, 1976, for trial. After sentence was imposed notice of appeal was given but there was no request that the sentence be suspended pending appeal. He was furnished a free transcript and his trial counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment is as follows:
“The grand jury of said county charge that, before the finding of this indictment, RICHARD LOUIS SMITH alias LEWIS RICHARD SMITH alias LARRY JOE WILLIAMS, whose name is to the Grand Jury otherwise unknown, feloni-ously took ONE HUNDRED FIFTEEN DOLLARS of the lawful currency of the United States of America, a more particular description and denomination of which is otherwise unknown to the Grand Jury, one man’s watch of the value of THREE THOUSAND DOLLARS, one two door Buick automobile of the value *501 of ONE THOUSAND TWO HUNDRED DOLLARS, and one silver service of the value of FOUR THOUSAND DOLLARS, the personal property of Melvin Bruce Sullivan, from his person and against his will, by violence to his person or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama.”
The evidence presented by the State made out a clearcut case of aggravated robbery. Appellant offered alibi evidence.
Between the hours of 8:00 and 8:30 on the night of May 28, 1975, the home of Dr. Melvin Bruce Sullivan, 4308 Corinth Drive, Mountain Brook, Jefferson County, Alabama, was burglarized by three white males armed with pistols. In the sitting or garden room at the time the men entered the house were Dr. Sullivan, his wife, mother, sister, brother-in-law, and one of his three daughters, Barbara. The bandits told them, “This is a holdup, get on the floor, face down, and if you aren’t good we are going to blow your heads off.” All of the persons in the garden room got on the floor on their stomachs and the bandits tied their hands behind them and tied their feet together with Dr. Sullivan’s neckties. The bandits asked if there was anyone else in the house and were told by Dr. Sullivan that his other two daughters were upstairs in their respective bedrooms. Two of the robbers went upstairs and, at gunpoint, forced the two girls to go to the room where the other members of the family were tied up. The bandits tied these two girls in the same manner as the others were tied.
The bandits then started ransacking the entire house. They removed the rings and watches from the arms and fingers of the helpless victims. They took Dr. Sullivan’s wallet containing $115.00 and his fishing license. They also took a silver service and a Buick automobile and other items of personal property.
According to the testimony of the victims, two of the bandits were masked. One had on a black curly wig and a purple piece of cloth that practically covered his face and left exposed a part of his nose and forehead. His eyes were not covered. The second bandit had a stocking over his head and face. None of the robbery victims saw the third robber because of the positions in which they were lying on the floor and bound.
Only one of the victims, Barbara, testified that she could identify appellant. She stated that she identified him by his eyes and voice at a lineup that was conducted two days after the robbery. She also made an in-court identification of appellant as one of the bandits.
All of the property taken in the robbery was subsequently recovered, identified by the respective owners and admitted into evidence. The Buick automobile was recovered subsequent to the robbery by another police officer and returned to the owner.
George Hannah testified that he lived at 210 Vetavia Street in Irondale, in Jefferson County, Alabama. He stated that he had lived at this address for eight years and that on May 27, 1975, appellant, Henry Mays and Frank Black came to his house and that Henry Mays was the only one of the trio that he personally knew. He said these men arrived at his house in a 1968 Dodge automobile which broke down at his house. He further testified that Mays returned to his home the next day, May 28, 1975, around 1:00 p.m. and he was driving a green Ford; that he ate lunch and returned home at 4:30 p.m. and appellant, Mays and Black were in his driveway working on the green Ford. He stated that between 7:30 and 8:00 p.m. this trio left in the green Ford and returned to his house around 11:00 p.m. that same night and they all came in his house carrying jewelry, silver, rings and watches. He said the three men made several trips to the green Ford and brought different items in his house. He further stated that he saw them with folding money.
Hannah further testified that he asked appellant, Mays and Black where they got all the items they brought in his home and their response was that “they said they hit a bargain somewhere.” Hannah stated he *502 did not ask the men to leave his home that night because they were all armed, and he saw five pistols. He said the only people in his home on the night of the robbery besides the trio were his uncle, Lewis Clark, his niece and her two small children. He said that no one left his home that night except his uncle who left at about 1:00 a.m. to get some food. Clark did not return to Hannah’s home after leaving ostensibly to get food.
This witness further testified that the next morning a whole bunch of law officers came to his home and arrested all the occupants, except the children, and carried them to jail. The officers took the items of property that appellant, Mays and Black brought in his house the night of May 28, 1975. Hannah and his niece were subsequently released from jail and no charges were lodged against them. This witness said when he was released he told Sergeant Richard C. Watkins of the Mountain Brook Police Department that he would testify against appellant, Mays and Black.
Sergeant Richard C. Watkins testified that on May 28, 1975, he investigated the robbery which occurred that night at the Sullivan home in Mountain Brook and that following that investigation he had occasion to go to Hannah’s house at 210 Vetavia Street in Irondale, Alabama, shortly after daylight on May 29, 1975. He was armed with a search warrant issued by Judge E. C. Herron of Irondale.
On a voir dire hearing out of the presence and hearing of the jury Watkins testified that he made an affidavit before Judge E. C. Herron that he had received information from “a reliable informer who has given me information on at least two former occasions which was correct told me today that he was present at the above address (210 Vetavia Street) when these items were brought into the house by three white males.” Watkins stated that Judge Herron signed the search warrant in his presence. The trial judge held the search warrant was valid and denied the motion to suppress. Appellant’s counsel asked that the affidavit and search warrant be marked for identification as defendant’s Exhibit # 1 and defendant’s Exhibit # 2 and the Court Reporter complied with this request. These exhibits were not introduced into evidence by either the defense or the State and, thus, are not before us for review as to their legality vel non.
Before the jury Officer Watkins testified that he and the other officers entered the house at 210 Vetavia Street, Irondale, and found appellant, Mays and Black among the people inside the house. In the course of the search of the house they found the radio with Barbara Sullivan’s name on it, which was introduced as State’s Exhibit “D”. They also found the following items: a lady’s watch in the shirt pocket of Henry Mays which was introduced into evidence as State’s Exhibit “P” another lady’s watch in Mays’ pocket introduced into evidence as State’s Exhibit “M”; a man’s watch was found on a hutch or china cabinet and became State’s Exhibit “K”; a man’s watchband was found on Mays’ arm and was introduced into evidence as State’s Exhibit “O”; a lady’s ring was found in the pocket of Mays and introduced into evidence as State’s Exhibit “J”; State’s Exhibit “N” was a piece of silver found in this house and was introduced into evidence; State’s Exhibit “L” was a billfold found on top of the hutch with the initials MBS on it and on the inside of the billfold was a fishing license issued to “M. B. Sullivan”; and State’s Exhibit “C” was a purple cloth found in an overnight bag on the kitchen table at the same address and it, too, was introduced into evidence.
Officer Watkins further testified that at 210 Vetavia Street was a green 1969 Ford automobile and an old Dodge car; that the officers searched the Ford automobile and found a black curly wig inside the car in plain view. In the trunk of the green Ford car the officers found 122 pieces of silver. The officers ascertained that the green Ford car belonged to Mays’ wife. The wig and the pieces of silver were introduced into evidence over appellant’s objections. The Court ruled that he did not have standing to question the search of the automobile *503 that belonged to someone else and in which he did not have any interest whatsoever.
At the close of the State’s case appellant made a motion to exclude the evidence on the ground the State failed to prove the corpus delicti and moved to exclude all the property recovered pursuant to the search warrant. These motions were overruled and denied.
Appellant and two supporting witnesses testified that he was in Atlanta, Georgia, until approximately 3:00 p.m. on May 28, 1975, and that he did not arrive at the residence of George Hannah until about 10:00 p.m. that night and, therefore, he could not and did not take part in the robbery at the Sullivan home.
On rebuttal the State called Russell M. Cunningham, Jr., who testified that he lived at 3621 Country Club Road in Mountain Brook and that appellant and another man were at his home on May 28, 1975, at approximately 1:00 p.m.
Conflict in the testimony between defendant’s alibi and that of the State in a robbery prosecution presented a jury question. Paige v. State, 56 Ala.App. 121, 319 So.2d 740; Simms v. State, 56 Ala.App. 156, 320 So.2d 89.
The uncontradicted testimony in this case shows that appellant had no proprietary or possessory interest in the green Ford automobile from which articles were taken by the officers. It was undisputed that the Ford ear belonged to Mays’ wife. Therefore appellant had no standing to object to the search of this car. Cassady v. U. S., 5 Cir., 410 F.2d 379; Russell v. State, 47 Ala.App. 612, 259 So.2d 298.
We have carefully searched the record in this case and find no reversible error.
AFFIRMED.
All the Judges concur.