HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at imprisonment in the penitentiary at ten years. Throughout the trial proceedings in the Circuit Court of Jefferson County he was represented by retained counsel and at arraignment he pleaded not guilty. After conviction and sentence he gave notice of appeal. New counsel was retained by appellant to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“The grand jury of said county charge that, before the finding of this indictment, Leroy Freeman, whose name is to the grand jury otherwise unknown, felo-niously took two one dollar bills of the lawful currency of the United States of America of the aggregate value of two dollars and forty cents in coins of the lawful currency of the United States of America of the aggregate value of forty cents, the personal property of Ella Gray, from her person and against her will, by violence to her person or by putting her in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama.”
The evidence was extremely conflicting. The evidence introduced by the State made out a clear-cut robbery case. Appellant’s defense was an alibi. When the State rested its case, appellant made the following motion: “We make a motion to exclude the evidence and grant the defendant a directed verdict.” There were no specific grounds stated in this motion to exclude. The law is settled that a motion to exclude without stating the grounds therefor is properly overruled. Espey v. State, 270 Ala. 669, 120 So.2d 904.
The victim, Ella Gray, testified that she lived at 738 32nd Street South in Birmingham in November, 1975, and had lived at *769 this address approximately six years. She further stated that she knew appellant and had known him in the neighborhood since she moved to the above address. She said that appellant lived with his mother, sisters and brothers in a house about a block from her house.
She further stated that on Friday, November 28, 1975, being the day after Thanksgiving, around 4:30 p. m. her boyfriend, L. C. Marino, and appellant came to her house. Marino had a pint of gin and she fixed two glasses with ice for them. The men drank the gin in the living room while she was cleaning her kitchen. She testified that while the men were in her house Marino gave her $60.00 to keep for him and she hid the money in the kitchen. She had a brown purse in the kitchen with her. It was on a chair and could be seen from the living room. After appellant and Marino consumed the pint of gin they left the house.
Shortly after the men left appellant returned to the house and kicked the screen door and snatched the hook or latch off and re-entered the house. He then slapped Ms. Gray on the side of her face hard enough to knock her to the floor and demanded that she give him the money. She said appellant had a paring knife in one hand while he was slapping her and he scratched her face with the knife. She stated that every time she tried to get up from the floor, appellant slapped her back down. He kept telling her to give him the money that Marino had given her to keep for him. She refused and appellant kept slapping her and she could not remember the number of times he slapped her. Appellant then grabbed her purse and went out the back door with it. She had two dollars and some change in her purse. The next morning she found the purse on her back porch and it was empty. After appellant left her house she went to a neighbor’s house and to the fire station where she called the police.
The police arrived and began their investigation. The following Tuesday Detective James E. Gay interviewed the victim and took photographs of her face which was still swollen. Such photograph was admitted into evidence.
L. C. Marino testified that he had known Ella Gray two or three years and had visited her on many occasions. He stated that he arrived at her house between 4:30 and 5:00 on the afternoon of November 28,1975, and had a bottle of gin with him. He stated that he had known appellant for a long time and that appellant followed him to the victim’s house because he had the gin. He said that Ella Gray was working in her kitchen when they went to her house and she fixed two glasses of ice for them; that he and appellant drank the gin. The victim did not have a drink with them.
He further testified that when he and appellant got ready to go he gave Ella Gray $60.00 in cash to keep for him. He stated he saw her put the money in her purse and he and appellant left the house. He said he went home and he did not know where appellant went. He said at a later date he got back the $60.00 that he had given Ms. Gray to keep for him.
Detective James E. Gay of the Birmingham Police Department testified that he had been on the police force for more than thirteen years. He interviewed Ella Gray at her residence on the morning of December 2, 1975, and took photographs of her face. In the course of his interview with the victim he learned that her assailant and robber was “one of the Freeman boys with the bad eye.”
On cross-examination Detective Gay testified that the victim “described him to me on my interview with her as being one of the Freeman boys who lives on 31st Street and the one with the bad eye.” He further stated that the first officer to investigate the incident filed a report in which he wrote the name “Fernando Freeman” as the suspect. Detective Gay made it plain, “That writing of Leroy is in my handwriting that I placed there after discovering his name.” He said he arrested Leroy Freeman at his home on December 2, at 10:45 a. m.
Ella Gray was recalled by the State and testified that from the time the incident *770 occurred at her house on November 28, 1975, until she was interviewed by Officer Gay she had not hurt her face in any way. She identified the photograph taken by Officer Gay and stated her face was swollen then. The trial judge asked her if the man she claimed took her money wore anything over his face or head and she replied, “No, sir.” She further testified that the man who hit her and took her purse had “one bad eye.”
Appellant testified in his behalf and at the outset of his direct examination the following occurred:
“Q. First of all, you were convicted in Federal Court over here for possessing stolen mail, weren’t you?
“A. Yes, sir.
“Q. Did you enter a plea of guilty to that?
“Mr. Gomany: Object to that, Judge.
“The Court: Overruled, you can testify.
“Q. Did you admit your guilt on that charge?
“A. Yes, sir.”
Appellant went on to testify that he did not go to Ella Gray’s house with L. C. Marino and drink gin on November 28, 1975. He denied ever having gone to the house of Ella Gray. Appellant offered an alibi as to his whereabouts on the day of the alleged offense. He attempted to support his alibi by his girl friend, members of his family and friends.
Several of appellant’s witnesses contradicted each other in their alibi stories. Some testified the group was drinking gin at the appellant’s mother’s home. Others testified they were drinking wine and beer and no gin was there. Most of the alibi witnesses stated they were playing cards that afternoon, but one denied that any card playing took place. One of the alibi witnesses contradicted everyone’s testimony by saying that appellant was at Betty Pratt’s house all day long until they went to Dorothy Walker’s party. All of the other witnesses stated the group was at the home of appellant’s mother until 7:00 that night.
It is settled law that conflicts in alibi testimony presented by the accused and identification testimony of the victim in a robbery prosecution is peculiarly within the province of the jury to resolve. For a collection of the cases on this principle see Ala.Dig.Cr.Law, No. 739(2).
Appellant contends the State’s case depended on the testimony of the robbery victim alone as against several witnesses for the defense showing that he was elsewhere when the alleged robbery occurred. The answer to appellant’s contention is that in our system of criminal justice, we do not travel on the numerical number of witnesses. Smith v. State, 53 Ala.App. 27, 296 So.2d 925.
A fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. Savage v. State, 57 Ala.App. 579, 329 So.2d 638; Williams v. State, Ala.Cr.App., 335 So.2d 249; Ala.Dig.Cr.Law, No. 553.
It is not within the province of the Court of Criminal Appeals to pass judgment on the truthfulness or falsity of conflicting evidence. .May v. State, Ala.Cr.App., 335 So.2d 242; Snipes v. State, 50 Ala.App. 139, 277 So.2d 413.
Appellant’s counsel at the beginning of this trial announced in open court in the presence of the venire that appellant had been convicted of possessing stolen mail, a Federal charge, “and he does expect to testify in this case.”
The State objected to counsel’s statement and the objection was sustained.
As pointed out in this opinion, during the direct examination of appellant, his own counsel, over the State’s objection, elicited from him an admission that he had previously been convicted in a Federal court of mail theft. The State did not, at any time, seek to prove appellant’s prior conviction in any form, fashion, or manner, either on the issue of his credibility or to enhance the punishment meted out to him. This was a voluntary admission on appellant’s part in open court and before the trial jury. This might well have been “trial strategy” on *771 the part of appellant’s counsel to lessen the impact of a prior conviction in the event the State sought to properly prove such prior conviction.
Had the State sought to prove a prior conviction of appellant it would have been required to follow the procedure outlined in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, and Highsmith v. State, 55 Ala.App. 272, 314 So.2d 874, restricting the proof to a certified judgment of conviction and to further prove that appellant was represented by counsel, or that there was a constitutional waiver of counsel. For further clarification see Ciervo v. State, Ala.Cr.App., 342 So.2d 394.
There is no reversible error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.