Appellant was convicted of leaving the scene of an accident and he was sentenced to three years imprisonment in the penitentiary. At arraignment he pleaded not guilty. After sentence was imposed he gave notice of appeal. He petitioned for and was granted a free transcript. Trial counsel represents him on this appeal.
Mrs. Linda Graham, the victim in this case, testified that on the morning of January 3, 1977, around 2:15 a.m., she left her place of employment and proceeded to drive to her home. As she was driving she noticed a man in a Volkswagen pull up beside her who speeded up or slowed down depending upon whether she accelerated or decelerated her automobile. She stated that she drove past Green Street where she was supposed to turn to go over to White Street. She began to sound her horn and the Volkswagen almost forced her off the street twice. She finally arrived at her apartment and continued to sound her horn hoping that her husband was at home and would come to her, but her husband was still at work. She parked her car and the man in the Volkswagen parked beside her car; then the man walked to the driver's side of Mrs. Graham's car and told her to roll the window down. She refused to obey this command and pointed her pistol at the man and told him she would shoot him if he did not go away. The man laughed at her and walked around to the passenger's side of Mrs. Graham's car and tried to open the door. The door was locked and the man started banging on the car window. When the man realized he could not get into the car he went to his car and backed it up and smashed his car into the driver's side of Mrs. Graham's car and then drove away.
Mrs. Graham further testified that at no time did this man give her his name, his registration, or tag number. He did not stop after running into her car. She said the man struck the door of her car with the right bumper of his car. She stated the area around her apartment was well lighted and she got a good look at the man who smashed into her automobile. The damage to her car was estimated to be two hundred dollars which did not take into account the bent frame. *Page 522 
Mrs. Graham stated that when the man drove away she got the tag number of the Volkswagen and the number was DOB564. She went into her apartment and called the Huntsville Police Department and reported what had occurred. On January 4, 1977, she went to the Police Department where Officer William Dobbs handed her a stack of six photographs and asked her to look through them to see if she recognized the man who drove his car into hers. She immediately selected a photograph of the appellant and this photograph was introduced into evidence as State's Exhibit No. 2. Mrs. Graham also made a positive in-court identification of appellant as the man who followed her to her apartment and ran his Volkswagen into her car. She stated that appellant appeared different at trial as his hair was cut shorter. She said on the night of the incident he had long blond hair and a beard. She described the automobile driven by appellant as a dark gray or brown Volkswagen.
On cross-examination Mrs. Graham testified that appellant offered to pay her husband any damage that was done to her car. She further stated that appellant offered $500.00 to her and her husband if they would drop the charges against him. This offer was rejected.
Howard Alspach, an officer with the Huntsville Police Department, testified that on January 3, 1977, about 2:35 a.m. he responded to a call from Mrs. Graham and observed her Toyota automobile damaged on the left rear quarter panel. He observed Mrs. Graham and she appeared nervous; as someone would naturally feel after going through some type of ordeal. He further stated that she did not appear to be intoxicated.
Police Officer Larry Gillespie testified that he went to Mrs. Graham's apartment at about 2:30 a.m. following a telephone call from her. He observed a small Toyota parked in front of her apartment with damage to the left rear quarter panel. He stated that he got close to Mrs. Graham and did not smell any intoxicating beverage. In his words, "She was frightened and shook up, but she was not intoxicated in any manner."
Police Officer William Dobbs testified that he was a "hit and run" investigator for the Huntsville Police Department; that he called Mrs. Graham to come to the Police Department to look at some photographs. He identified State's Exhibits 1 through 6 as the same photographs he had shown Mrs. Graham. He stated that when she came across Patrick Bezotte's picture she said, "this is the one." He further stated that he ran a check on the license number DOB564 and found it was listed as belonging to Patrick Bezotte on Warren Drive.
Joel Jones, a Huntsville Police Officer, testified that he arrested appellant on a warrant for leaving the scene of an accident; that appellant was driving a 1967 Volkswagen and that the entire right side of the Volkswagen had been damaged.
Emmett Sanders, License Director for Madison County, testified as a witnesses for appellant and said that license number DOB564 could not be checked because it was not sold in Madison County. On cross-examination he stated that license number DDB564 was registered to Patrick Bezotte. He described the vehicle as a 1967 Volkswagen Beetle Sedan Primer Brown.
At the conclusion of the State's case in chief appellant made a motion to exclude the State's evidence on the ground the State had failed to make out a prima facie case. The trial court overruled this motion.
Appellant's defense was an alibi. He did not testify but offered the testimony of several witnesses tending to support his alibi.
James Hardin testified that on the night in question he attended a party at his employer's house in Morgan County from 11:00 p.m. until 2:15 a.m. He stated that appellant and his wife attended the same party. He further testified that, when he and his wife were leaving, he saw appellant and his wife getting ready to leave the party at the same time.
Hardin stated that he was employed at Automatic Electric which business was *Page 523 
owned and operated by Greg Henderson. He said he knew Mrs. Bezotte and had often seen her eating lunch with her husband at Automatic Electric.
Dennie Wingester testified that he attended the same party given by Greg Henderson who was his immediate supervisor. He stated that he spoke to appellant and his wife several times during the party and saw them preparing to leave the party at 2:10 a.m. According to Wingester the party took place in Morgan County which was an hour's travel from downtown Huntsville.
Ricky Edwards testified that he was employed at Automatic Electric and attended the party given by Greg Henderson and talked to appellant and his wife at the party. He stated that he saw them at the party at 2:00 a.m.
Janice Bezotte testified that she and appellant attended a party at her boss's house on the evening of January 1, 1977, and the early morning hours of January 2, 1977. She stated she and her husband left the party at about 2:00 a.m., arriving home at 3:25 a.m. She said appellant did not leave home again that morning. She further testified they drove their brown Volkswagen to the party.
On rebuttal the State called Leon Greene who testified that he was employed by the Madison County Sheriff's Department and had been so employed for about ten years. He stated that he knew Janice Bezotte and knew her reputation in the community for truth and veracity and that her reputation was bad.
The evidence in this case was in sharp conflict. We have held many times that conflicting testimony presents a jury question and a verdict rendered thereon will not be disturbed on appeal.Woods v. State, Ala.Cr.App., 344 So.2d 1225; Young v. State, Ala.Cr.App., 346 So.2d 509.
Alibi evidence is always a jury question. Mullins v. State, Ala.Cr.App., 344 So.2d 539; Smith v. State, Ala.Cr.App.,346 So.2d 500; Freeman v. State, Ala.Cr.App., 350 So.2d 768.
A much more serious question is presented by this entire record on the matter of whether appellant received a fair and impartial trial due to the conduct of the prosecuting attorney. Defense counsel made known to the Court that he had reason to believe that the prosecutor intended to ask two key defense witnesses about a juvenile record and a Youthful Offender conviction. The trial court instructed the prosecutor not to try and bring out anything concerning "Youthful Offender and juvenile."
From the record:
(Cross-examination of James Hardin)
 "Q. Were you or were you not convicted of indecent molestation, or adjudged guilty of indecent molestation, on January 25, 1967?
"A. No
"MR. SHIPMAN: Your Honor, we would object.
"THE COURT: All right. He said no.
 "MR. SHIPMAN: We are going to object to further questions along this line, the inference being made to the jury — We would like to know if there is some reasonable belief for the District Attorney even asking that question. It sets up the inference in front of the jury, even though he denied it.
"THE COURT: I overrule the objection."
On re-direct examination, the witness testified that, at the time of trial, he was twenty-one years old, which would have made him 11 years of age in 1967.
Further from the record:
(Cross-examination of Janice Bezotte)
 "Q. Janice, are you the same Janice Bezotte, who on November 4, 1974, in the Circuit Court of Madison County, Alabama was adjudged guilty of possession and sale of heroin?
"A. No, sir, I was not.
 "MR. SHIPMAN: Your Honor, we object. We would like to make some motions outside the presence of the jury. We brought this up to the Court before.
 "THE COURT: Ladies and gentlemen, go back into the Jury Room. *Page 524 
 "(The following occurred out of the presence and hearing of the jury:)
 "MR. SHIPMAN: Your Honor, we object on the grounds that the witness was not convicted of possession and sale of heroin, to the best of our knowledge and belief. She was convicted as a youthful offender. We brought this up to the Court prior to her taking the stand. We would maintain that the question so highly prejudices the defense witness that at this point we have no choice but to once again ask the Court for a mistrial.
 "MR. HOOPER: I have a certified copy of the judgment entry when she was found guilty. That was in 1973 when she entered the youthful offender report.
 "THE WITNESS: I was not convicted for the sale of heroin.
 "MR. SHIPMAN: We would further maintain in our motion that the word "heroin" has a connotation which cannot be erased in the jurors' minds, and here she is charged and convicted for the possession of barbiturates, and the possession of barbiturates being a far cry from the possession and sale of heroin, and we don't feel that it can be eradicated from the jurors' minds.
 "We would further ask before Court ends today that the Court Reporter read back the question that was asked to James Hardin in regard to his indecent molestation charge on such and such a date so that we may check it. We have reason to believe that there was never any James Hardin convicted of any indecent molestation, and again the question may have been so prejudicial that it could not do anything but hurt the Defense, and there would have been no grounds for it, to the best of our knowledge and belief. The defense witness has assured us that there are no grounds for this charge, and we looked it up and we can't find any such charge. I don't know why the question was asked.
 "THE COURT: What says the State? Let me ask you this; is that what you are basing your question on, what you have in your hand there, this copy of the certificate?
"MR. HOOPER: Yes, sir.
 "THE COURT: Does that say anything about heroin in it?
"MR. HOOPER: In the indictment, Judge —
"THE COURT: What was she convicted of?
"MR. HOOPER: For possession of barbiturates.
 "THE COURT: You know how to ask a question in regard to laying a predicate for a prior conviction?
"MR. HOOPER: Yes, sir.
"THE COURT: Have you got any other little tricks like
that that you want to try to pull on the Court?
 "MR. HOOPER: No, sir, Judge, that wasn't a little trick. I apologize.
 "THE COURT: Have you got any other convictions you want to try to pull on this witness?
 "MR. HOOPER: No, sir. The YO was 1973. That was the one that Mr. Shipman referred to earlier.
 "THE COURT: Is there any other witness you have that you are going to call?
 "MR. SHIPMAN: I think this will be our last witness, Your Honor.
 "THE COURT: I am going to overrule your objection. I am going to instruct the jury in regard to both grounds that you have raised, to disregard the statement of the prosecuting attorney and the question that was asked of this witness, and to the witness James Hardin in regard to any prior convictions. I will let you proceed to ask the witness in regard to the conviction, if she has one, in regard to what she was convicted of.
"Bring the jury back out."
When the jury returned the trial judge gave the following cautionary instructions.
From the record:
 "THE COURT: Ladies and gentlemen, right before we took the recess, the break here, the question was asked of this witness by the prosecuting attorney in regard to whether or not she had been convicted of a prior offense of the possession *Page 525 
and sale of heroin. I want you to disregard that question. Erase that from your mind. Do not let that bear on your consideration in this case whatsoever. I do not want you to pay any attention to what you have heard in regard to that question. Furthermore, there was a question asked earlier in regard to James Hardin in regard to whether or not he had been convicted of indecent molestation. Please disregard that question. He had denied it anyway, but I want you to disregard the fact that he was even asked that question, and do not let that have any bearing whatsoever in your deliberations in the case in arriving at your verdict.
"Go ahead with the witness."
At this point, the prosecuting attorney asked the witness if she had been convicted of possession of barbiturates. Bezotte replied that she had.
Subsequently, appellant requested that the trial judge voir dire the jurors as to whether they could disregard these two instances. This motion was denied. However, the trial judge again instructed the jury that they were not to "let it have any bearing whatsoever on [their] decision in the case."
In addition to his objections at trial, the appellant also included this matter in his motion for new trial. This motion was also denied.
In both instances, the prosecuting attorney did not come forward with a record of conviction, although both witnesses responded in the negative to the questions asked of them. Appellant contends that the prosecutor raised prejudicial inferences before the jury which he had reason to know were completely unfounded.
We find in the American Bar Association Standards for Criminal Justice the following statement concerning the function of the prosecution. "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence." Similarly, Alabama law states that, while the prosecuting attorney is under a duty to prosecute the case with vigor and earnestness, he should not take unfair advantage of the defendant. Arant v. State, 232 Ala. 275, 167 So. 540.
Even though a prior conviction involving moral turpitude may be shown upon the cross-examination of a witness, this examination should be subject to the limitation that it be conducted in good faith. See 3 A.L.R.3rd 965, and the cases cited therein, concerning lack of documentary proof of a prior felony conviction.
Appellant also contends that the prosecutor committed prejudicial errors during his closing argument to the jury in commenting on the defendant's failure to testify.
From the record:
"THE COURT: All right. Start your closing summations.
 (Mr. Hooper summed up to the jury on behalf of the State. During same the following occurred:)
 "MR. SHIPMAN: Your Honor, we would object to the prosecutor saying that nobody took the stand and said, `Yes, I stopped. Yes, I did something else,' referring to the Defendant. We would object to that.
 "THE COURT: I sustain the objection. Ladies and Gentlemen, disregard the remarks that have been made by the prosecuting attorney. Disregard it from your mind. Do not let it have any bearing on your decision in the case. Let me say again at this point whatever they say is strictly — It's not evidence in the case. It's merely their inferences they get from the evidence that has been produced on the witness stand and that's all.
"Go ahead.
 "MR. HOOPER: Let me rephrase that. There has been no testimony either denying or affirming those elements of leaving the scene of an accident.
 "MR. SHIPMAN: Your Honor, we would object again to the statement by the prosecutor.
 "THE COURT: I sustain your objection. "Go to some other point. *Page 526 
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to the prosecutor testifying that the Defendant was in jail, when in fact he was not in jail. He was out for a long period of time on bond. He is misleading the jury.
"THE COURT: I sustain your objection.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to that. We never said we represented him in another case. We said we were his attorney.
"MR. HOOPER: Judge, the record will bear me out.
"THE COURT: I sustain the objection.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object. The Court ruled that this conversation was inadmissible.
"THE COURT: I sustain the objection.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to putting the jurors and their families in the place of the victim. I think that's improper.
"THE COURT: Sustained.
 "MR. HOOPER: I apologize for that, Your Honor. I apologize to the jury. I would hate for that to happen.
 "MR. SHIPMAN: Your Honor, we object. He is just repeating the same thing.
"THE COURT: I sustain the objection.
 (Mr. Hooper then concluded his summation to the jury.)
 (Mr. Shipman summed up to the jury on behalf of the Defendant.)
 (Mr. Hooper further summed up to the jury on behalf of the State. During the same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to the prosecutor saying, `He wouldn't tell them that he was in another county and he had an alibi.' This is referring again to the Defendant and we object to that.
 "THE COURT: I sustain the objection. I ask the jury to disregard the remarks of counsel in regard to that statement.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to constantly referring to a witness that the Defense did not put on. He was equally available to the prosecution.
"THE COURT: Sustained.
 "MR. HOOPER: I wish the witness was equally available to me. I wish Mr. Shipman had told me who these people were.
 "MR. SHIPMAN: Your Honor, I am going to object to that. He is going into it again.
"THE COURT: I sustain the objection.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: We object, Your Honor. We object to that. She couldn't have seen that. That was taken in 1973 and this happened in 1977.
"THE COURT: I sustain the objection.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to the question to the jury, `What would he have done had he gotten in there?' This is in regard to leaving the scene of an accident. He is not on trial here for anything that might have happened.
"THE COURT: Sustained.
 (Mr. Hooper then resumed his summation, and during same the following occurred:)
 "MR. SHIPMAN: Your Honor, we object to telling the jury to put your wife over here.
"THE COURT: Sustained.
 (Mr. Hooper then resumed his summation, and during same the following occurred:) *Page 527 
 "MR. SHIPMAN: Your Honor, we are going to object to any testimony, any argument, as to why the Defendant did or did not come forward and say anything. I object to that.
"THE COURT: I sustain the objection.
 "MR. HOOPER: But why would alibi witnesses, friends, why would they let you stay in jail or under these conditions for nine months?
 "MR. SHIPMAN: Your Honor, I object to that again. There has been no testimony to that effect.
"THE COURT: I sustain the objection."
In dealing with a similar matter the Supreme Court in Blue v.State, 246 Ala. 73, 19 So.2d 11, said:
 "In determining the question before the court, we do not think that each of the above statements must be analyzed separately to see whether or not, if standing alone, it would create an ineradicable bias or prejudice. We think, on the contrary, that these various statements should be considered together to determine whether or not, in their cumulative effect, they created a prejudicial atmosphere. It may be that some of the statements of the solicitor were replies in kind to statements made by counsel for the defendant, and we fully recognize, as said in Arant v. State, 232 Ala. 275, 167 So. 540, 544, `a trial is a legal battle, a combat in a sense, and not a parlor social affair.' The record shows that the presiding judge exercised great patience and in most of these incidents did what he could to disabuse as far as possible the minds of the jury of any prejudicial impression; but it is our duty to see to it that trials are free from prejudice and passion and that the courthouse means that where a conviction is obtained, it is obtained in an impartial atmosphere. The foregoing remarks were made in the presence of the jury. Considering them in their cumulative effect, we think that they were calculated to inject the poison of bias and prejudice into the minds of the jury. They created an atmosphere of bias and prejudice which no remarks by the court could eradicate. This is not justice and prejudicial error has been shown. Kabase v. State, 244 Ala. 182, 12 So.2d 766."
And we add, that the accumulated conduct of the prosecution was prejudicial there can be little doubt. Nor can there be any doubt that appellant was tried in an atmosphere wholly at war with due process.
Mindful of the language in Beecher v. State, 294 Ala. 674,320 So.2d 727, and Robinson v. State, Ala.Cr.App.,352 So.2d 11, this case is due to be reversed and remanded.
Reversed and Remanded.
All the Judges concur.