HARRIS, Presiding Judge.
Appellant was convicted of murder in the first degree and the jury fixed his punishment at imprisonment in the penitentiary for life. Prior to trial appellant was found to be indigent and counsel was appointed to represent him. At arraignment he pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The victim was a wholesale distributor for the W. T. Raleigh Company and delivered household merchandise to retail salesmen. On the date of his murder the victim was making deliveries to salesmen using his motor home as a means of transportation.
On December 29, 1975, he made a delivery to the apartment of Reverend Jack Hanks located at 3008 29th Avenue, North, Birmingham, arriving there at approximately 5:15 p. m. that date. The victim talked with Reverend Hanks about twenty minutes after he made a delivery and collected ten dollars for the merchandise. Hanks watched the victim, Paul Emory Buffington, as he walked to his motor home parked in front of Como’s Grocery about one-third of a block from Hanks’ apartment. He saw the deceased get in his van or motor home. A few seconds later Hanks saw three men come around the corner of his apartment house and walk toward the van. He observed the door of the van open and the three men enter the van. At this time it was dark and Hanks could not tell if the three men were white or black. A short time later he saw the van drive off toward 28th Street and he did not see the victim or the three men get out of the van before it left. He further testified that he knew appellant but since it was dark he could not say that appellant was one of the three men he saw enter the van.
Willie Lee Williams testified that on December 29,1975 she lived with her family at 1543 Twentieth Street, North, in Birmingham, Alabama; that on the morning of that date she put out her garbage can for pick up. This date was on a Monday, and her garbage is picked up on Monday and Thursday of each week. Later that evening she picked up her garbage can to take it in her house and she noticed a man’s billfold was in the can. The identification in the billfold was that of Paul E. Buffington. She looked up the telephone number of the name listed and talked with a lady.. Some time later that night two police officers picked up the billfold. She stated that 1412 Twentieth Street, North is approximately 3V2 blocks from her home. .
Roy Robinson, Jr., testified that, on the morning of December 30, 1975 while walking to his work at Superior Vault located on 29th Avenue, between 25th and 26th *733 Streets, he found a billfold with eyeglasses and three credit cards on the street next to the Quick Mart located on the corner of First Avenue and Huntsville Road. He looked in the billfold and saw the name of the deceased and he called the wife of the deceased and told her what he had found and in less than two hours two detectives came out and picked up these items.
V. E. Grissett lives next door to a vacant house and on the morning of December 30, 1975 he observed a van parked behind this vacant house next to his home at 1420 Twentieth Street, North, in Birmingham. He said that afternoon he saw some people around the van getting some little packages and saw them leave running. Around 3:00 p. m., Mr. Grissett saw a colored male who “appeared to be around 18 years old” enter the motor home and leave there running. Mr. Grissett then called the Police Department. He stated that this person “looked to be the same one” who had entered the motor home earlier that same afternoon.
W. L. Allen testified that he had been employed by the Coroner’s Office of Jefferson County, Alabama, as a deputy coroner for the last sixteen years and was so employed on December 30, 1975. On that occasion he received a call and proceeded to 1412 Twentieth Street, North, Birmingham, Jefferson County, Alabama, where he observed the body of a person later identified as Paul Buffington; that he was taken behind a house where a motor home was parked. He said the body was underneath the back porch of this house; that he attended an autopsy performed by Dr. Henry P. Santina and Pathologist Assistant Jay M. Glass. He stated that he made several photographs of the deceased on the scene and in the autopsy room; that he observed what he thought to be bullet entrance and exit wounds on different parts of the deceased’s body. He said that the number one bullet wound alone would not have caused death; that number two would have been an instantaneous cause of death. He stated that the victim died between 8:00 and 12:00 p. m.. on December 29.
Jay M. Glass testified that he was employed at Cooper Green Hospital as a Pathologist’s Assistant and was so employed on December 31, 1975, when he assisted in an autopsy performed on a body identified as that of Paul Buffington; that he observed several gunshot wounds on the deceased’s body, one in the back of the head, one in the back of the neck, one running across the back of the head and one entering the right arm. He testified that the head wound penetrated the skull transecting the brain stem at its base, which would have caused instantaneous death; that he recovered various projectiles from the deceased’s body.
Louis Evans testified that he was employed by the Police Department of the City of Birmingham as a Police Officer and was so employed during the month of December, 1975. He said that, on December 30, 1975, he was working the 3-11 shift and had occasion to go to 1412 Twentieth Street, North; that he observed that said address was a vacant house. Further he said he noticed a white mobile home was parked in the rear of the building. After a two or three minute search he located a body underneath the house, and he said he called evidence technicians.
Richard Keith Crocker testified that he was employed by the City of Birmingham as an Evidence Technician and was so employed on December 30, 1975, working the 12-8 p. m. shift. He stated that on that date he had occasion to go to 1412 Twentieth Street, North. At that location he observed a 1974 Champion Motor Home and underneath the vacant house at that address the body of Paul E. Buffington; that the scene immediately around the motor home was scattered with paper work and little assorted bottles of flavorings. He said that the inside of the motor home was completely ransacked. He stated that cases and bottles were scattered in different parts of the vehicle; that he had occasion to make thirty-nine separate photographs. He also had occasion to dust for prints in the motor home; that he did not find any latent prints on the outside of the van, but two lifts were obtained from the inside *734 surfaces that were turned over to the I.D. Fingerprint Section of the Birmingham Police Department.
He stated that they also processed three hundred or more assorted bottles and cans and obtained twenty-one suitable latents; that they also processed some bottles and cans behind the house in the alley and obtained approximately seventeen lifts. He stated that some time later he went to Cooper Green Autopsy Room and obtained postmortem prints from thé victim and photographed the victim’s body.
Francisco Zortores testified that he lives at 6037 29th Court, North, Birmingham, Alabama, which is located in the College-ville area of North Birmingham; that his nickname is “Sonny.” He stated that he knows the defendant Roger Ransom; that he also knows Clyde Gray, Jr. The witness testified that he was at home playing cards with some fellows when a man named Lee told him that Roger wanted to see him down on the corner. He stated that Roger was on the corner of 29th Avenue and 30th Street in front of Como’s Store. He said when he got there Roger asked him if he could drive a van that was there. He said he told him yes and that he and Ransom and Clyde went in the van and looked around. He stated that he went to the driver’s seat and asked Roger for the keys; that he gave him the keys and he tried to start the engine. Once he got the engine started and the van in gear Roger told him to “go up on Druid Hills.” He stated that they drove approximately 25 minutes when Roger told him to go in an alley in the back of a house; that after the motor home was parked behind the house Clyde and Roger got out with the man; that on the drive to Druid Hills he had heard some mumbling in the back and had seen the man on his knees crouched down in the back of the van. After Roger and Clyde got out with the man, he searched the van; after he had been in the van about ten minutes he got out and went into the house. He said that when he went into the cellar Clyde and Roger were in there. He stated that Roger was on the way out. He testified that when he went into the cellar he saw the man lying face down. He got ready to go back out of the house and heard some shots. He saw a gun in Roger’s hand and heard three or four shots; that he found a little wallet with some cards in it, but that he looked at it and threw it back down in the van. He stated that after he heard the shots Roger said, “It won’t shoot,” so he told Roger to push the trigger back. He stated that Roger had got the gun from him the day before. He stated that he had found the gun some two to three weeks before but that it “wouldn’t shoot good.” He said that sometimes the trigger would hang up. He said it was a .22 pistol; that after he left the house he saw a woman in a window and yelled “there’s a lady” and ran. He said that about an hour later he and Roger and Clyde got back together and went to Norman King’s house. Then from there they went back to Roger’s house and smoked pot and played cards. He testified that Roger gave him about $14.00. He saw Roger the next day, but did not have any conversation with him about what had happened the night before nor was it discussed at any other time. He said he never did get the gun back from Roger.
Sonny further testified that as he continued his exit from the cellar, he heard a total of three or four shots and saw a gun in defendant’s hand after he and defendant were outside the cellar. He recognized the gun in defendant’s hand as the one he had lent the defendant the previous day and that it was a .22 caliber pistol. He also testified that he asked the defendant why he had shot the man, and the defendant responded, “Because he could identify us.”
Norman King testified that he had had several conversations with the defendant concerning the murder. During these conversations, the defendant related the events leading up to the murder of Paul E. Buff-ington: that the defendant saw the victim at Reverend Jack Hanks’ home and that he waited for him to return to the motor home; that he entered the motor home after the victim did and that Sonny Zor-tores and Clyde Gray shortly followed and entered the motor home; that Sonny drove *735 the motor home; that the defendant had argued with the victim over the whereabouts of the victim’s money; that the victim said he was going to remember the defendant; that the defendant dragged the victim out of the motor home and under a house; that the three men (Sonny Zortores, Clyde Gray, and the defendant) each shot the victim once. The witness further testified that the defendant told him that he had played cards the night of the murder, using money that had been taken from the victim; that “about $60 apiece” was taken from the victim. The witness was offered a gun for sale by Sonny Zortores; whereupon, the witness asked the defendant if that was the gun which he used to murder “the cracker.” The defendant replied, “Yeah”, but that the gun “didn’t work right”; that every time you shot it, you had to push the trigger back.
Judith S. Crittenden, Counsel for the witness Sonny Zortores, testified that no bargains, formal offers of plea bargaining, or concrete promises had been made between her and the State in connection with Sonny Zortores’ testimony against the defendant.
James Trammel, Birmingham Police Department, testified he was investigating a different case against Norman King before he knew that other officers were seeking him for questioning in this particular case. Officer Trammel made the decision to release King only after determining that there was no case against King, and, if pursued, prosecution would not be successful.
Robert B. Johnson testified that he was employed by the City of Birmingham Police Department as Supervisor of Scientific Investigation, which includes a unit in the Fingerprint Bureau and a small ballistics laboratory. He said he was present on December 31, 1975, at the autopsy of the victim. He said he observed the bullets and bullet fragments being removed from the victim’s body. He testified that the bullets and fragments were turned over to the coroner, who in turn turned them over to him. He determined the caliber of the bullets to be .22 shorts.
Sandy Triplett testified that she is employed by the City of Birmingham Police Department as a fingerprint technician in the Identification Bureau. She testified that in connection with the Paul Buffington homicide she had occasion to have certain latent fingerprints turned over to her by the evidence technicians. She stated she examined somewhere in the neighborhood of 150 latent prints. She was asked to make comparisons with the prints of 42 individuals; that she compared Roger Ransom’s known prints to those latents that were turned over to her. She testified that she was unable to make a comparison with latent prints against those of Roger Ransom, Clyde Gray, Jr., or Francisco Zortores. She stated she did match some of the la-tents with the known prints of a Gwendolyn Kindred.
Appellant did not testify but called Annie Brown to testify in his behalf.
Miss Annie Brown, girl friend of the defendant, lived in the same house as did the defendant, at the time of the murder. Miss Brown testified the defendant and “other guys” came into the house around 5:00 or 5:30 p. m., on December 29, 1975, where they gambled until 12:00-12:30 that night. The witness testified she remained in the same room with the defendant during this time period.
The next witness for the defense was Janie Lee Ransom, mother of the defendant. She testified she saw her son “go upstairs” the afternoon of December 29, 1975, with “some of his friends”, one of whom was Clyde Gray. She further testified that her son did not leave the house afterwards, but stayed upstairs until around midnight.
Appellant’s defense consisted solely of an alibi. We have held many times that alibi evidence is always a jury question. Harris v. State, Ala.Cr.App., 343 So.2d 567; Mullins v. State, Ala.Cr.App., 344 So.2d 539; Smith v. State, Ala.Cr.App., 346 So.2d 500; Freeman v. State, Ala.Cr.App., 350 So.2d 768.
*736 When, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. Such conspiracy need not be proved by positive testimony, and the jury is to determine whether it exists and the extent of it, from the conduct of the parties and all the testimony. Godfrey v. State, Ala.Cr.App., 333 So.2d 182; Landry v. State, 56 Ala.App. 421, 321 So.2d 759.
The evidence in this case clearly established that State witness, Norman King, was not an accomplice to the crime charged, and therefore, his testimony could properly be considered as corroboration of the testimony of the admitted accomplice, Zortores. Summers v. State, Ala.Cr.App., 348 So.2d 1126.
This was a heinous and atrocious murder and appellant’s guilt was proved out of his own mouth by the testimony of Norman King. It took the jury only forty minutes to return a verdict of guilty as charged, with punishment fixed at life imprisonment.
We have thoroughly searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.