The appellant was convicted of murder, in violation of §13A-6-2, Code of Alabama 1975. He was sentenced to life imprisonment.
 I
The appellant alleges that the trial court erred in allowing the victim's wife to testify concerning the victim's children, because this evidence was immaterial and irrelevant, and it merely served to elicit the jury's passion and to prejudice it against the appellant. The appellant cites Knight v. State,273 Ala. 480, 142 So.2d 899 (1962), wherein the Court held that it was reversible error for the prosecutor to elicit testimony regarding the number of the victim's children. The State acknowledges in its brief that the testimony was error based onKnight v. State, 273 Ala. 480, 142 So.2d 899 (1962), and its progeny, but it argues that this error was harmless in light of the overwhelming evidence of the appellant's guilt.
This rule of law was first stated in Fisher v. State,23 Ala. App. 544, 129 So. 303 (1930). In that case, the widow testified concerning the number and ages of the children who survived the deceased. The Court noted that the defendant timely objected to this testimony, and, after his objections were overruled, he reserved exception. The Alabama Court of Appeals held that the admission of this evidence constituted reversible error.
 "In these several rulings, all to the same effect, the learned trial judge fell into error. 'It is not permissible to show the number of children left by the deceased, or their ages. * * *' 30 C.J. 177 § 400.
 "Perhaps the following language used by this court, in the opinion on rehearing in the case of Thomas v. State, 18 Ala. App. 268, 90 So. 878, 880, is here apt; at any rate, we quote and adopt it, in this connection, to wit: 'If as a consequence of this unfortunate homicide it resulted, as may be judged from the record, that * * * orphans were left to mourn the death of deceased, this fact of itself could shed no light upon the issues involved * * * for the law makes no distinction in matters of this nature. A man with * * * children can be accorded no more rights under the law than a man without such * * * children.' "
Fisher v. State, 129 So. at 304.
In Lovejoy v. State, 244 Ala. 637, 15 So.2d 303 (1943), the Alabama Supreme Court cast doubt upon the merit of the Court of Appeals' holding in Fisher v. State, supra. In so doing, the Alabama Supreme Court appeared to apply the harmless error analysis to this type of error. The Court stated:
 "In particular, we hold that, as a rule, the mere admission of evidence of the number of children left by deceased, or their ages, without more, should not work a reversal in a homicide case. The Fisher case, Fisher v. State, 23 Ala. App. 544, 129 So. 303, quoted and followed in the opinion in the instant case, seems to call for a reversal for error in admitting evidence merely of the number and ages of the children of deceased. We think the opinion goes too far in that regard. But the evidence here went much further. Says the Court of Appeals: 'But the admission of the testimony as to the number of children left by deceased; of their partial abandonment by his widow acting in supposed concert with Johnny Lovejoy; their predicament, treatment, and manner of being cared for by relatives, cannot be justified on any ground that occurs, or has been suggested, to us. Much testimony along this line was brought out by the State, all over appellant's objections, with due exceptions reserved. It seems unnecessary to specify it more particularly, here.'
 "In permitting this wide line of evidence calculated to inflame the jury, while shedding no light on the homicide, presented such a state of the case that we cannot say the Court of Appeals was in error in reversing the cause."
Lovejoy v. State, 244 Ala. at 637-38, 15 So.2d 303.
In Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962), the deceased's mother testified that the deceased had left twin children, who were 11 years old and who "are here today" and "in the witness room." The Alabama Supreme Court noted that the deceased's children did not testify or have any connection *Page 122 
with any of the issues of the case. The Court stated that the holding in Fisher v. State, supra, was "criticized," but was "not overruled" in Lovejoy v. State, supra. The Court went on to hold:
 "How many children the slain man had, their ages, and that they were in attendance in the witness room are irrelevant facts in the instant case. The writer is of the view that to hold such evidence not prejudicial to the defendant is to disregard the realities of trial atmosphere and the emotional frailties of human nature. This writer feels bound to note in view of another trial and § 382(10), Title 15, Code 1940, Recompiled 1958; 40 C.J.S. Homicide § 225, p. 1146; and 26 Am.Jur. 367, Homicide, § 314."
Knight v. State, 273 Ala. at 491, 142 So.2d 899.
In Hutto v. State, 278 Ala. 416, 178 So.2d 810 (1965), a juror stated that he had known the children of the deceased while she was in the insane asylum. The Court stated that the fact that the deceased had children had no probative value and was prejudicial to the defendant "because the evidence tends to provoke, in the jury, sympathy for the children of deceased who have lost a parent and animosity against defendant who has allegedly caused the loss." Id. 178 So.2d at 812. The Court, however, noted that the defendant did not move the trial court to instruct the jury to disregard the statement. The Court held that this particular statement concerning the deceased's children was not such an error that the prejudicial effect could not have been removed by instructions from the court to the jury to disregard the statement. The Court went on to say, however, that "[w]e are not to be understood as holding that the prejudice of a statement going into greater detail could be removed by such an instruction to the jury." Id. at 812.
Subsequently, in King v. State, 43 Ala. App. 628,198 So.2d 308 (1967), the Alabama Court of Appeals held that this rule of relevancy also pertained to any attempt to elicit evidence as to how many children the defendant had. Id. 198 So.2d at 312.
In the present case, the following testimony constituted the cross-examination of the victim's wife:
 "Q. Sheila, how long were you and Dwight [the victim] married?
"A. It would have been eight years September 30th.
"Q. And did y'all have any children?
"A. Three.
"Q. Three children?
"A. Yes.
"Q. What are their ages now?
"[DEFENSE COUNSEL]: Objection. Irrelevant.
"THE COURT: Overruled.
"A. Ten, three, and two.
"[PROSECUTOR]: I have no further questions."
This testimony by the victim's spouse concerning the number of children and their ages did not constitute error. Cf.Payne v. Tennessee, 500 U.S. 415, 111 S.Ct. 2597,115 L.Ed.2d 720 (1991) (wherein the United States Supreme Court held that victim impact evidence was admissible for consideration during the penalty phase of the capital case). See also McNair v.State, [Ms. 90-1556, July 24, 1992] 1992 WL 172200 (Ala.Cr.App. 1992) (stating that, "even before Payne, this Court had indicated that 'Booth [v. Maryland, 482 U.S. 496,107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)] and [South Carolina v.] Gathers
[490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989)] pertain only to evidence or argument presented at the sentence phase of a capital trial . . . and have no bearing on . . . remarks [made at the guilt phase].' ") Similarly, in McNair v. State, supra, this Court held that certain victim impact-type arguments, made during the guilt phase of a capital case, were not error in that prosecution, based on the overwhelming evidence of the appellant's guilt. The Court quoted Darden v.Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472,91 L.Ed.2d 144 (1986), concluding that " 'the overwhelming evidence to support a finding of guilt . . . [not only] reduced [but virtually eliminated] the likelihood that the jury's decision was influenced by argument.' " Id. at *12. In the present case, it is undisputed that the appellant hit *Page 123 
the victim in the head with a pick, causing the victim's death. It is doubtless that the jury's verdict was unaffected by the testimony concerning the number of children left by the victim and their ages. Thus, we find no reversible error in the admission of this testimony.
 II
The appellant argues that the trial court erred in admitting into evidence "a blurry photograph," because the State's authenticating witness could testify only that the photograph depicted one type of injury that was similar to the type sustained by the victim. Thus, the appellant argues that the witness could not definitely identify the photograph as depicting the victim's actual injury. However, the record indicates that the witness identified the photograph as depicting the victim and accurately representing the injury to the victim. The admission of such photographic evidence is a matter left largely to the discretion of the trial court.Holder v. State, 584 So.2d 872 (Ala.Cr.App. 1991). There was no abuse of discretion as to this matter.
Moreover, the "blurry" nature of the photograph was a matter concerning the weight, rather than admissibility, of the photograph.
 III
The appellant argues that the trial court erred in failing to instruct the jury to disregard an emotional outburst by the victim's wife. He further argues that the trial court erred in denying his motion for a new trial based on this emotional outburst. The record indicates that the appellant did not request any instructions concerning this outburst by the victim's wife; therefore, this issue has not been preserved for appellate review. Watley v. State, 568 So.2d 852
(Ala.Cr.App. 1989), cert. quashed, 568 So.2d 857 (Ala. 1990).
The appellant argues that he filed a motion for a new trial on this ground, which was denied by the trial court. The record indicates that the following transpired during the closing argument by the prosecutor:
 "[DEFENSE COUNSEL]: Your Honor, at this time, I'm going to object to not anything the District Attorney is doing, but to what is going on in the courtroom. The wife of the decedent has cried and left the courtroom, and is crying in the next room. I would ask either that she be asked to leave —
 "THE COURT: I think Mr. Murphy has handled that. Proceed."
The appellant asked that the victim's wife leave and the court responded that she had been taken out of the courtroom. In light of the facts of this case and the evidence presented, we find no error in the trial court's denial of a motion for a new trial based on this ground. See Crowe v. State,485 So.2d 351, 362-63 (Ala.Cr.App. 1984), reversed on other grounds,485 So.2d 373 (Ala. 1985), cert. denied, 477 U.S. 909,106 S.Ct. 3284, 91 L.Ed.2d 573 (1986) (wherein the victim's widow sat at the counsel table, over the appellant's objection, and began crying during the pathologist's testimony, but the trial judge refused to remove her from the counsel table. Appellant's attorney requested a short recess for her to compose herself and the request was granted.) See also Henderson v. State,583 So.2d 276, 287 (Ala.Cr.App. 1990), affirmed, 583 So.2d 305
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268,117 L.Ed.2d 496 (1992) (wherein this Court found that emotional outbursts by the victim's brother during his testimony and again during the State's closing guilt-phase argument did not unduly prejudice the defense).
The decision whether to grant a motion for a new trial rests largely within the sound discretion of the trial court,Davis v. State, 457 So.2d 992 (Ala.Cr.App. 1984), and, on appeal, this Court will indulge every presumption in favor of the correctness of that decision. Moore v. State, 457 So.2d 981
(Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757,84 L.Ed.2d 820 (1985).
 IV
The appellant argues that the above-described errors, when taken together, constitute prejudicial and harmful error, requiring the reversal of his conviction. However, because no single instance of alleged improper *Page 124 
conduct constituted reversible error, this Court will not consider their cumulative effect to be greater error.McNeely v. State, 524 So.2d 375 (Ala.Cr.App. 1986); Johnson v.State, 541 So.2d 1112 (Ala.Cr.App. 1989).
 V
The appellant argues that the evidence presented did not support his conviction for murder and that the trial court erred in denying his motion for a new trial on the grounds that the verdict was against the great weight of the evidence. This argument is based on the appellant's allegation that the evidence was uncontroverted that he was intoxicated when the victim was killed. However, although the evidence was uncontradicted that the appellant had been drinking, the State presented evidence to indicate that the appellant was not intoxicated to the point of insanity during the offense.
According to § 13A-3-2(a), Code of Alabama 1975, voluntary intoxication is not a defense to a criminal charge, but evidence of intoxication is admissible to negate an element of the offense charged.
The record indicates that the victim lived next door to his brother, an eyewitness to the incident, and that the appellant was staying with the victim at the time of the offense. Earlier in the day, the appellant and his brother had been drinking beer together, but the appellant had not been seen drinking since that time. Some time after 8:00 p.m., the appellant became belligerent in his brother's house and was asked to leave. The appellant asked to be taken to a store, but his brother refused to take him and again asked that he leave. His brother followed the appellant to make sure that he got home safely and told him that he would see him in the morning. The appellant then picked up a pick ax, which was located near the steps, and threatened the witness with it. The brother testified that he had last seen the pick ax in the back of the truck, where he had previously left it. The appellant drew back the pick ax and the brother ducked, but when he looked up, the appellant no longer had the pick ax in his hand. The appellant swung at his brother with his fist, but missed him. The victim and his wife emerged from the victim's house and told the brother not to worry about the appellant. The appellant then jumped on the victim, but the victim was able to knock the appellant down and tell him to come home. When the victim released the appellant, he jumped on the victim again. The victim then was able to sit on the appellant and he again told him to come home. The appellant stated that, when he got up, he would kill the victim and his brother. When the victim got up, the appellant grabbed the pick ax and swung it at the victim, hitting him in the head. The victim then fell to the ground. The victim's wife pulled the pick ax from the victim's head and the appellant attempted to take the pick ax from her. A witness fired his pistol in the area, and the appellant released the pick ax and ran. A few minutes later, the appellant returned and begged the victim not to die, so that he would not have to go to jail.
The degree of intoxication necessary to negate specific intent and reduce the charge must amount to insanity. Ex parteBankhead, 585 So.2d 112 (Ala. 1991).
 "In an assault and battery case, voluntary intoxication is no defense, unless the degree of intoxication amounts to insanity and renders the accused incapable of forming an intent to injure. Lister v. State, 437 So.2d 622 (Ala.Cr.App. 1983). The same standard is applicable in homicide cases. Crosslin [v. State, 446 So.2d 675
(Ala.Cr.App. 1983), appeal after remand, 489 So.2d 680 (Ala.Cr.App. 1984)]. Although intoxication in itself does not constitute a mental disease or defect within the meaning of § 13A-3-1, Code of Alabama 1975, intoxication does include a disturbance of mental or physical capabilities resulting from the introduction of any substance into the body. § 13A-3-2. The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill. A jury is capable of determining whether a defendant's intoxication rendered it impossible for the defendant to form a particular mental state."
Ex parte Bankhead, supra, at 121.
In the present case, the appellant's degree of intoxication was in dispute and presented *Page 125 
a question for the jury's determination. Ex parte Bankhead, supra, at 121. There was sufficient evidence to substantiate the jury's determination in this matter.
The appellant also argues that he acted in self-defense, but, pursuant to the evidence at trial, the jury properly rejected this claim. A person is justified in using deadly physical force against another person if it reasonably appears that the other person is about to use deadly physical force upon him. § 13A-3-23, Code of Alabama 1975. In this case, it is uncontradicted that the victim was unarmed, and the evidence indicates that the victim manifested no intent to use any deadly physical force against the appellant. Moreover, the appellant's failure to retreat bars him from claiming self-defense, pursuant to § 13A-3-23(b), Code of Alabama 1975.
The appellant also argues that he committed this offense in the heat of passion. The record indicates that the trial court instructed the jury that, if it found that the appellant acted in the heat of passion it could return a verdict finding the appellant guilty of manslaughter. The jury's determination that the appellant did not act in the heat of passion, so as to negate the requisite intent, was not error under these facts.
 AFFIRMED. All Judges concur.